per curiam:
En esta ocasión debemos evaluar la conducta de una Jueza Superior que mostró impaciencia, falta de temperamento y severidad excesiva contra un ciudadano por este comparecer a un procedimiento criminal en su contra sin representación legal. Por entender que su pro-ceder atenta contra la fibra misma de nuestro sistema de justicia y quebranta la confianza que el sistema debe pro-mover en los jueces y las juezas, suspendemos a la Hon. Gloria M. Sierra Enríquez de empleo y de sueldo por el término de un mes.
*835 I
La Hon. Gloria M. Sierra Enríquez juramentó como Jueza Superior el 23 de julio de 2004. En agosto de 2008 ocupó una posición en el tribunal de Manatí, en la que preside la Sala donde se ventilan casos criminales menos graves. Ese mismo año presidió el caso Pueblo v. Héctor L. Rivera Marín, Crim. Núm. 2008-583. El Sr. Héctor L. Vi-rella Marín fue acusado de cometer el delito menos grave de intrusión a la tranquilidad personal, según codificado en el Artículo 189 del Código Penal de Puerto Rico, 33 L.P.R.A. see. 4817.([1])
En la denuncia presentada en contra del señor Virella Marín se le imputó haber cometido una conducta constitu-tiva del referido delito cuando supuestamente profirió un lenguaje amenazante y abusivo a la agente Esther Castillo Lozano mediante una llamada telefónica. El 29 de septiem-bre de 2008 se determinó causa probable contra el señor Virella Marín, quien había laborado como policía por once años hasta que un accidente de tránsito motivó su retiro por incapacidad.
El 3 de noviembre de 2008 se celebró el primer señala-miento del caso en la Sala Superior de Manatí. El señor Virella Marín compareció por derecho propio. Por su parte, la fiscal Jennifer Cancio expresó que el Ministerio Público estaba preparado y que toda la prueba de cargo estaba presente.
Al inicio de la vista, la jueza Sierra Enríquez inquirió al señor Virella Marín sobre su representación legal. A conti-nuación, transcribimos el diálogo entre ambos:
*836 HON. JUEZ:
¿Don Héctor Virella?
SR. VIRELLA MARÍN:
Servidor. Vamos a solicitar del Honorable Tribunal que se cite oficialmente a un grupo de personas como testigos de re-putación y mi señor hermano que no está presente ...
HON. JUEZ:
¿Usted se está representando por ...
SR. VIRELLA MARÍN:
Derecho propio.
HON. JUEZ:
... sí mismo. ¿Por derecho propio?
SR. VIRELLA MARÍN:
En este momento, sí, Su Señoría.
HON. JUEZ:
O sea, que está renunciando a abogado. ¿Y cómo usted va a contrainterrogar y a contrainterrogarse?
SR. VIRELLA MARÍN:
¿Discúlpeme?
HON. JUEZ:
¿Usted está renunciando también a su derecho a autoincri-minación?
SR. VIRELLA MARÍN:
En este momento no.
HON. JUEZ:
Fiscal, ¿cómo podría este señor entonces representarse a sí mismo en un caso criminal ... [como este?]
SR. VIRELLA MARÍN:
Discúlpeme. Solicitamos del tribunal que se cite oficial-mente a unos testigos de reputación ...
HON. JUEZ:
Pues, este tribunal ...
... le va a ordenar oficialmente que contrate un abogado. Que yo no veo cómo usted se pueda representar a sí mismo en un caso criminal sin que se aut[oi]ncrimine ... ¿De qué usted vive, don Héctor?
SR. VIRELLA MARÍN:
En estos momentos estoy recibiendo una compensación militar.
HÓN. JUEZ:
Por lo tanto, tiene dinero para contratar un abogado.
*837 SR. VIRELLA MARÍN:
No suficiente, Su Señoría.
HON. JUEZ:
¿No tiene? O sea, ¿usted se reitera en que no va a contratar abogado?
SR. VIRELLA MARÍN:
Puedo hacer las gestiones para un abogado en una fecha ... posterior.
HÓN. JUEZ:
Pues yo le aconsejo que lo haga. Porque va a ser so pena de desacato, entonces sería otra ... otra ... otro posible delito en el cual usted estuviera implicado. Y entonces, su abogado que cite a los testigos que sean.
SR. VIRELLA MARÍN:
Sí, Su Señoría. Transcripción de evidencia de 3 de noviem-bre de 2008, págs. 2-4.
Luego, la jueza Sierra Enríquez preguntó al señor Vire-lla Marín los nombres de los testigos que interesaba citar para la vista en su fondo. Además, reseñaló la vista para el 26 de enero de 2009 a las 9:00 a.m.
Así las cosas, el señor Virella Marín presentó una Mo-ción por Derecho Propio el 26 de noviembre de 2008, en la que solicitó al tribunal que le asignara un abogado. Ex-presó que su “situación económica [sic] en este momento no es favorable para pagar un abogado de la practica [sic] privada”. Asimismo, detalló que acudió a la Oficina de Ser-vicios Legales de Manatí y de Arecibo y a las oficinas de Pro Bono, Inc. para recibir representación legal por su con-dición de indigente. Adujo que su ingreso era de novecien-tos sesenta y dos dólares mensuales para cinco dependientes. Sin embargo, alegó que ambas entidades le informaron que no podían representarlo por ser acusado de un delito menos grave, a pesar de que carecía de recursos económicos suficientes para contratar un abogado. ([2]) La *838 jueza Sierra Enríquez denegó su petición mediante Notifi-cación de 9 de diciembre de 2008. Sostuvo lo siguiente: “Aténgase a lo dispuesto en la vista del 24 de noviembre de 2008. Debe Comparecer con abogado a la vista”.
Inconforme, el señor Virella Marín presentó una se-gunda moción por derecho propio el 19 de diciembre de 2008, en la que solicitó las razones por las cuales su solici-tud de asignación de un abogado no fue aprobada. Ante esto, el 29 de diciembre de 2008, la jueza Sierra Enríquez reiteró: “Aténgase a la minuta del 3 de noviembre de 2008”.
De la queja presentada por el señor Virella Marín surge que, en enero de 2009, este acudió a la Oficina del Pro-grama de Ayuda Legal del municipio de Manatí. Allí en-tregó los documentos que le habían requerido y la Leda. Yaítza Maldonado Rivera le informó que, como no había podido entrevistar a los testigos y el caso se vería ese mismo mes, le solicitaría al tribunal una fecha posterior para la vista.
Llegado el 26 de enero de 2009 se celebró la segunda vista criminal contra el señor Virella Marín, según pautada. Comparecieron el acusado, los testigos que soli-citó citar, el fiscal Peter Cordero en representación del Mi-nisterio Público, la supuesta perjudicada y un testigo de la Fiscalía. La jueza Sierra Enríquez preguntó al acusado quién era su abogado. El respondió que lo representaba la licenciada Maldonado Rivera. Acto seguido, la magistrada le preguntó dónde estaba su abogada y el acusado explicó que ella le había informado que solicitaría al tribunal que citara el caso para otro día, ya que tenía un caso impor-tante en Arecibo. Un abogado que estaba presente en la sala confirmó que la licenciada Maldonado Rivera estaba *839 en Axecibo y añadió que él la sustituyó en la mañana. Sin embargo, expresó que la licenciada Maldonado Rivera no le habló del señor Virella Marín.
Así las cosas, la jueza Sierra Enríquez concedió un turno posterior para que el señor Virella Marín se comuni-cara con la licenciada Maldonado Rivera. Más tarde, esta última hizo una comparecencia especial y expresó:
El caballero estuvo por nuestra oficina, nosotros lo orientamos. Como es parte ... de los trámites que hacemos ... en la División Legal del Municipio de Manatí. Se le advirtió que el caso nosotros no lo estábamos aceptando y que tomaría-mos ... nosotros teníamos otro asunto en la mañana de hoy y que en caso de que lo pudiéramos representar, debido a que teníamos otros 4 asuntos en Arecibo, le orien ... le diríamos y le advertimos que también buscara representación porque ya usted le había dado otra oportunidad [.] Transcripción de evi-dencia de 26 de enero de 2009, pág. 5.
Luego de esto, la jueza Sierra Enríquez, sin proveerle al señor Virella Marín una oportunidad de brindar su versión sobre el asunto, concluyó:
HON. JUEZ:
... Este señor no solamente ha desacatado al tribunal, sino que ha mentido ante este tribunal en el día de hoy. Así que este tribunal le impone a este señor un desacato sumario por haberle mentido a este tribunal frente a todas estas personas que están aquí presentes y haber hecho a esta abogada venir de donde estaba teniendo otros clientes. Se le impone una multa de $500.00 por este desacato. Y se le impone otro des-acato por haber venido sin abogado. Son dos desacatos. Usted tenía que haber venido aquí con abogado. Lo sabía. No sabe-mos si por eso fue que dijo que ésta era su abogada. Así que no solamente vino sin abogado sino que le miente al tribunal diciendo que su abogada es la licenciada Maldonado, hecho que no es cierto. Así que se le va ... tiene $1,000.00 por los dos desacatos, a ser cumplidos antes de las 3:00 de la tarde del día de hoy. ...
Toda la prueba y son agentes del orden público, que repito, han estado todo el día ausente de sus funciones. Y las acusa-ciones que hay en su contra es en cuanto a la agente Esther Castillo Lozano, ¿no? Y usted citó a toda esta gente, que son *840 agentes del orden público, verdad, los citó para que perdieran su día haciéndole creer al tribunal que usted tenía abogado. ¿Qué usted va a hacer ahora? ¿Qué usted va a hacer ahora? ...
Y para mí se me hace sumamente difícil pedirle a alguno de los abogados aquí presentes que lo representen a usted. Por-que ... yo no voy a poner a ningún abogado ... en esa situación. Más cuando usted le ha mentido al propio tribunal.
LCDA. MALDONADO:
Su Señoría, pedimos permiso para retirarnos, por favor.
HON. JUEZ:
Queda excusada, licenciada.... Muchas gracias por su pre-sencia aquí. ... Y el tribunal se va a reconsiderar en cuanto a uno de los desacatos, que fue ... el de venir sin abogado[. T]iene los 500 pesos, pero en cuanto al otro desacato, este Tribunal tiene la potestad de imponerle cárcel. Y usted lo sabe. Y yo le voy a imponer 10 días[, e]n cuanto a haberle mentido al tribunal. ... Yo no sé ni qué hacer para citar este caso nuevamente. Cuatro agentes que han perdido el día entero. ¿Usted va a conseguir abogado, señor?
SR. VIRELLA MARÍN:
Sí, Su Señoría.
HON. JUEZ:
Eso mismo me dijo la última vez y quisiera que ... escuchá-ramos la grabación. “Sí, Su Señoría”, así me dijo la última vez, que iba a conseguir abogado. Si no consigue abogado tiene otro desacato. Pa’ que lo sepa. Así que él se va ingresado en el día de hoy por 10 días [y] tiene $500.00 de multa por el otro des-acato y vamos a señalarle la vista con suficiente antelación para que contrate abogado. Transcripción de evidencia de 26 de enero de 2009, págs. 6-9.
Luego, mientras coordinaban el señalamiento para la próxima vista, la jueza Sierra Enríquez expresó que para esa fecha “[s]i viene sin abogado nuevamente desacata al tribunal y se va 10 días de nuevo” encarcelado. Id., pág. 10. Esa misma tarde, la jueza Sierra Enríquez emitió dos ór-denes en las que declaró culpable al señor Virella Marín del delito de desacato criminal. En la orden que condenó al acusado a cumplir diez días de cárcel, la jueza Sierra En-ríquez se fundamentó en que “[l]e mintió al Tribunal al informar que su abogada era la Leda. Ya[í]tza Maldonado, *841 cuando no era cierto, según lo confirmó la abogada”. Orden de 26 de enero de 2009. De la segunda orden se desprende que la jueza Sierra Enríquez impuso al acusado, quien pre-cisamente alegaba indigencia, una pena de “$500 de multa ... o un (1) día de cárcel por cada $50 que deje de pagar ...”. Id. Se fundamentó en que “[s]e presentó sin abogado, ha-biéndosele ordenado en varias ocasiones”. Id.
Concluida la vista, el señor Virella Marín fue ingresado en la Institución Correccional Guerrero en Aguadilla. Es-tuvo encarcelado durante diez días y fue puesto en libertad el 5 de febrero de 2009. También pagó la multa de quinien-tos dólares. Así, cumplió la condena impuesta en su totalidad.
Cinco días después de recobrar su libertad, la Adminis-tración del Seguro Social le envió una carta informándole que le suspendería los beneficios de Seguro Social debido a que supo que el señor Virella Marín estaba “encarcelado por la sentencia de un crimen ...”. Informe de la Comisión, pág. 7.
Posteriormente, se celebró la tercera vista contra el se-ñor Virella Marín, quien compareció representado por el Ledo. Paolo J. Pérez Román. Este último solicitó el tras-lado del caso ante otro magistrado, pues entendía que se había mancillado la credibilidad de su cliente por el inci-dente del desacato. Así pues, la jueza Sierra Enríquez or-denó el traslado del caso y del expediente al Tribunal de Primera Instancia, Sala de Ciales.
La cuarta vista para atender el caso se celebró el 1 de abril de 2009 en la sala mencionada. Fue presidida por la Hon. Eugenia M. Cruz Sánchez, jueza superior de la Región Judicial de Arecibo, quien resolvió rápidamente el caso cuando la agente Castillo Lozano aceptó las disculpas del señor Virella Marín y le extendió la mano. Ello, previo a iniciarse el desfile de prueba. De esta manera, la jueza Cruz Sánchez emitió una sentencia en la que ordenó el archivo y sobreseimiento del caso, a petición del Ministerio *842 Público, en virtud de la Regla 247(A) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
Finalmente, el 4 de marzo de 2009, el señor Virella Ma-rín presentó una queja juramentada contra la jueza Sierra Enríquez para reclamar las razones por las cuales no le asignó un abogado de oficio, a pesar de sus solicitudes por escrito, en violación de sus derechos civiles y constitu-cionales. Además, solicitó una investigación, alegando que la jueza Sierra Enríquez le violó su dignidad como ser humano. Expresó que quería evitar que otro ciudadano pase por la experiencia desagradable de que sus familiares e hijos presencien cómo es llevado a la cárcel esposado de pies y manos como un criminal.
Luego de la investigación correspondiente, la Oficina de Administración de los Tribunales (OAT) sometió ante la Comisión de Disciplina Judicial el Informe de Investiga-ción, con su Apéndice, para la determinación de existencia o inexistencia de causa probable para continuar el procedi-miento disciplinario.
Oportunamente, el comisionado asociado, Ledo. Angel F. Rossy, determinó causa probable para la presentación de una querella por violación a los Cánones 4, 8, 9 y 14 de Ética Judicial, 4 L.RR.A. Ap. IV-B. Así pues, el 2 de junio de 2011, la Comisión emitió y notificó una Resolución me-diante la cual instruyó a la OAT a formular una querella contra la jueza Sierra Enríquez.
Consecuentemente, la OAT presentó la querella corres-pondiente y formuló tres cargos contra la jueza Sierra Enríquez. En el primer cargo se le imputó a la querellada violar los Cánones 4 y 8 de Ética Judicial, supra. Ello por ignorar el Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, y desatender los reclamos del acusado para que se le asignara una representación legal de oficio, ya que alegaba ser indigente. Asimismo, se le imputa violar los derechos constitucionales del señor Virella Marín, vulnerar el de- *843 bido proceso de ley e infringir su deber ético de ser cuida-dosa y rigurosa en el estudio y la aplicación del derecho.
En el segundo cargo se le imputó a la jueza Sierra En-ríquez violar los Cánones 8 y 9 de Etica Judicial, supra, al no brindar al señor Virella Marín la oportunidad de rebatir la declaración ambigua de la licenciada Maldonado Rivera de que ella no era su abogada. La OAT encontró que sur-gían de las expresiones de la abogada elementos que suge-rían la posibilidad de que ella pudo haberle creado expec-tativas al señor Virella Marín de que lo representaría. Según la OAT, el proceder de la querellada constituyó una conducta impropia, en perjuicio y total menoscabo de los derechos del quejoso.
En el tercer cargo se le imputó a la querellada infringir el Canon 14 de Etica Judicial, supra, al abusar de su dis-creción y ser excesivamente severa a los hechos de este caso, en violación a los derechos fundamentales del señor Virella Marín. La OAT encontró que, al imponer los dos desacatos al acusado, la jueza Sierra Enríquez fue parcial, mostró impaciencia y severidad excesiva, y no mantuvo su conducta dentro de la debida propiedad y circunspección.
Por su parte, la jueza Sierra Enríquez presentó su con-testación a la querella. En esencia, negó los cargos que se le imputan. En particular, invoca como defensa su buena reputación entre quienes asisten a su sala. También, alega que sus acciones constituyen, a lo sumo, un error de hechos o de derecho en el desempeño de sus funciones judiciales, lo cual no constituye causa para disciplinarla. Asimismo, argumenta que no estaba obligada a determinar la indi-gencia del señor Virella Marín y asignarle abogado de oficio. Incluso, justifica que, para el momento de los he-chos, no existía una lista para la designación de abogado de oficio en delitos menos graves para el Tribunal de Manatí. Además, alega que el señor Virella Marín no in-vocó expresa e inequívocamente el derecho a representarse y que el querellante no era indigente, a base de la totalidad *844 de las circunstancias que la querellada tuvo ante sí. Igual-mente, aduce que la imposición de una pena desproporcio-nada a los hechos delictivos o reñidos por la ley o la Cons-titución no constituye necesariamente una conducta antiética. También señala que se trata de un acto aislado que no refleja una conducta intencional en abierto desafío al estado de derecho vigente.
Posteriormente, ambas partes presentaron un acuerdo de estipulación de hechos y de documentos. En este acuerdo, la jueza Sierra Enríquez aceptó que sus actuacio-nes ameritaban una amonestación.
Después de recibir dicho acuerdo, la Comisión de Disci-plina Judicial celebró una vista evidenciaría, en la que se admitió y marcó la evidencia documental estipulada. Por su parte, la OAT se reafirmó en su posición de que la que-rellada infringió los Cánones 4, 8, 9 y 14 de Etica Judicial, supra. Sin embargo, la jueza Sierra Enríquez sostuvo que solamente violó el Canon 4, “ ‘a los efectos de que no se interpretaron correctamente los reglamentos de la Rama Judicial’ ”. Informe de la Comisión, pág. 10. La Comisión aceptó resolver el caso por el expediente, pero se reservó el derecho a aceptar o no el acuerdo en cuanto a que la me-dida disciplinaria a imponerse fuera una amonestación. Además, concedió a las partes un término para que presen-taran por escrito su posición en cuanto a los cánones infringidos.
Finalmente, la Comisión de Disciplina Judicial concluyó que existe prueba clara, robusta y convincente de que la jueza Sierra Enríquez en efecto cometió todos los cargos imputados de violación a los Cánones 4, 8, 9 y 14 de Etica Judicial, supra. Detalló que la jueza Sierra Enríquez admi-tió haber violado el referido Canon 4 de Etica Judicial al incumplir con el procedimiento reglamentario de asigna-ción de abogados de oficio. También, sostuvo que la quere-llada violó el Canon 8, supra, cuando disuadió al señor Virella Marín de ejercer su derecho a comparecer por dere- *845 cho propio, basándose en un desconocimiento elemental del procedimiento criminal.
De la misma forma, luego de señalar que la querellada no escuchó la posición del señor Virella Marín antes de imponerle el desacato, la Comisión determinó que la que-rellada violó el Canon 8 “al no ejercer la diligencia orien-tada hacia el empeño de descubrir los hechos esenciales de cada controversia’ y que además violó el Canon 9 al no conceder al querellante la oportunidad de ser oído’ y por ende el derecho constitucional a un debido procedimiento de ley”. Informe de la Comisión, pág. 24.
Respecto a la imposición de ambos desacatos, la Comi-sión concluyó que la jueza Sierra Enríquez violó el Canon 14, supra, al utilizar una severidad excesiva y permitir que el reclamo del querellante de su derecho constitucional y estatutario a un abogado influyera negativamente en su determinación judicial.
En cuanto a la sanción a imponer a la querellada, la Comisión señaló que las estipulaciones entre las partes no obligan al tribunal. Por ello, sugirió que impongamos a la jueza Sierra Enríquez
... una sanción más severa y contundente. La misma enviará un mensaje prístino e inequívoco de que es inaceptable, más que obviar la aplicación de un reglamento administrativo, vio-lentar el debido proceso de ley de un ciudadano y condenarlo a la cárcel irreflexivamente. Entendemos que la violación del primer cargo por sí sola amerita una amonestación. No obs-tante, en este caso concluimos que existe prueba clara, ro-busta y convincente de que la querellada violó todos los cargos imputados. Por tanto, recomendamos que este Honorable Foro Judicial imponga a la Jueza Sierra una suspensión de empleo y sueldo por el término que consideren prudente. (Enfasis en el original). Informe de la Comisión, págs. 27-28.
Inconforme con dicha recomendación, la jueza Sierra Enríquez presentó ante nos un escrito titulado “Compare-cencia de la querellada Hon. Jueza Gloria M. Sierra Enrí-quez solicitando revisión Informe Comisión Disciplina Ju *846 dicial”, en el que reafirmó las alegaciones que hizo en su contestación a la querella.
Luego de evaluar detenidamente el Informe rendido por la Comisión de Disciplina, escuchar el audio de las vistas judiciales en controversia y de considerar la prueba perti-nente, las alegaciones de la jueza Sierra Enríquez y el De-recho aplicable, estamos en posición de resolver.
II
A. Debido proceso de ley y el derecho a asistencia de abo-gado
La Constitución del Estado Libre Asociado de Puerto Rico dispone que ninguna persona será privada de su libertad o propiedad sin debido proceso de ley. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Asimismo, nuestra Constitución garantiza a los acusados la asistencia de un abogado en todos los procesos criminales. Id., Sec. 11. La Enmienda Sexta de la Constitución de Estados Unidos también garantiza lo anterior. Enmda. VI, Const. E.E. U.U., L.P.R.A., Tomo 1.
Para cumplir este mandato constitucional, el 1 de sep-tiembre de 2008 entró en vigor el Reglamento para la Asig-nación de Abogados y Abogadas de Oficio en Procedimien-tos de Naturaleza Penal. In re Nuevo Reglamento Abogados de Oficio, 173 D.P.R. 653 (2008). Este tiene como objetivo brindar representación legal a los imputados indigentes que no puedan ser representados por la Sociedad para la Asistencia Legal (SAL) u otra entidad análoga. Id. La determinación inicial sobre la indigencia la realizará la SAL o la entidad análoga. íd. En aquellos casos donde no se haya evaluado la capacidad económica de una persona imputada de delito que alega indigencia, el tribunal la re-ferirá a la SAL o a la entidad análoga correspondiente. Id. De no ser posible lo anterior, el tribunal realizará la deter-minación de indigencia a la luz de los criterios que esta-blezca el Director o la Directora de la OAT. Id.
*847 Por otro lado, nuestro ordenamiento jurídico también reconoce el derecho a renunciar a la asistencia de abogado y comparecer por derecho propio ante un tribunal mediante la autorepresentación. Pueblo v. Cruzado, 161 D.P.R. 840, 844-847 (2004); Lizarríbar v. Martínez Gelpí, 121 D.P.R. 770, 784 (1998). Véase, además: Faretta v. California, 422 U.S. 806, 818 (1975). Sin embargo, este derecho no es absoluto. Pueblo v. Cruzado, supra, pág. 846; Lizarrí bar v. Martínez Gelpí, supra, pág. 777. Para evaluar si procede que una persona comparezca por derecho propio, hemos establecido los criterios siguientes:
(1) que la representación, como regla general, no puede ser híbrida, esto es, el acusado no debe estar representado por abogado y, a la vez, representarse por derecho propio; (2) que la decisión tiene que haberse tomado voluntaria e inteligente-mente, y con pleno conocimiento de causa; (3) que tiene que hacerse mediante una solicitud expresa e inequívoca al tribunal; (4) que se debe formular oportunamente!, pues mientras más adelantado el proceso, mayor la discreción del juez para denegarla]; (5) que, además, se tomará en consideración la demora o interrupción de los procedimientos y su efecto sobre la adecuada administración de la justicia; (6) que se deberá atender el factor de la calidad de la representación que la parte habrá de procurar, así como la complejidad de la contro-versia que se adjudicará; (7) que el acusado tendrá el deber de cumplir esencialmente con las reglas procesales y con el dere-cho aplicables, aunque no se le requerirá un conocimiento téc-nico de éstos; (8) que el magistrado no está obligado a ilustrar al acusado acerca de esas leyes o reglas; (9) que el magistrado tampoco está obligado a nombrarle abogados asesores durante el proceso; (10) que el magistrado no tiene el deber de inquirir respecto a las razones por las cuales el acusado ha elegido la representación por derecho propio, aunque en los casos que estime conveniente] podría así hacerlo, y (11) que el magis-trado tampoco tiene la obligación de informar al acusado de su derecho a la autorrepresentación. Pueblo v. Cruzado, supra, págs. 846-847. Véase In re Scherrer Caillet-Bois, 162 D.P.R. 842 (2004).
B. El desacato
El desacato es un procedimiento sui generis que *848 exige la inmediata intervención del tribunal. In re Cruz Aponte, 159 D.P.R. 170, 182 (2003); Pueblo v. Torres, 56 D.P.R. 605, 623 (1940). Existen dos tipos de desacato: el civil y el criminal. Pueblo v. Vega, Jiménez, 121 D.P.R. 282, 290 (1988). El desacato civil tiene un propósito reparador: inducir a alguien a cumplir con una obligación. Pueblo v. Vega, Jiménez, supra, pág. 290, citando a Pueblo v. Lamberty González, 112 D.P.R. 79, 81-82 (1082). Véase, también, Shillitani v. United States, 384 U.S. 364 (1966). Por otra parte, el desacato criminal tiene como objetivo vindicar la autoridad del tribunal. Pueblo v. Vega, Jiménez, supra. Véanse: In re Cruz Aponte, supra, pág. 182; States v. Mine Workers, 330 U.S 258 (1947). En particular, hemos expresado que la conducta meritoria de la imposición de un desacato criminal es aquella que interrumpa los procedimientos llevados a cabo en el foro judicial y menoscabe el respeto debido al tribunal. Pueblo v. Lamberty González, supra, pág. 82; Dubón v. Casanova, 65 D.P.R. 835, 844 — 845 (1946). En el caso de desobedecer alguna orden del Tribunal, será necesario que el Estado demuestre la intención del acusado de desobedecer el mandamiento. Pueblo v. Concepción Fonseca, 101 D.P.R. 357 (1973).
En lo pertinente al caso ante nos, la penalidad por un desacato criminal podrá ser un término fijo de encarcelación o una multa fija, independientemente del cumplimiento o incumplimiento con la orden original. E.L.A. v. Asoc. de Auditores, 147 D.P.R. 669, 685 (1999); Pérez v. Espinosa, 75 D.P.R. 777, 781 (1954).
El procedimiento a seguir para la imposición de este desacato se establece en la Regla 242 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual dispone lo siguiente:
(a) Procedimiento sumario. El desacato criminal podrá cas-tigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se come-tió en presencia del tribunal. La orden condenando por des-acato expondrá los hechos y será firmada por el juez, deján-dose constancia de ella en las minutas del tribunal.
*849 (b) Procedimiento ordinario. Salvo lo provisto en el inciso (a) de esta regla, en todo caso de desacato criminal se le dará al acusado previo aviso la oportunidad de ser oído. El aviso ex-pondrá el sitio, hora y fecha de la vista, concederá al acusado un tiempo razonable para preparar su defensa, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. El acusado tendrá derecho a su libertad provisional bajo fianza de acuerdo con las disposiciones de estas reglas. Si el desacato se fundara en actos o conducta irrespetuosa hacia un juez, éste no podrá conocer de la causa excepto con el consentimiento del acusado.
Por nuestra parte, hemos sostenido que “los jueces deben utilizar el desacato como última alternativa para vindicar la dignidad del tribunal, debido a que el uso indiscriminado de este instrumento equivaldría a una falta de temperamento judicial”. In re Cruz Aponte, supra, pág. 181. De hecho, hemos sido categóricos al reiterar que el desacato no puede convertirse en un instrumento de opresión que destruya el propio orden e y la integridad del proceso que la ley quiso mantener. Id., pág. 185; Pueblo v. Susoni, 81 D.P.R. 124, 157-158 (1959).
En circunstancias extremas, la imposición de un des-acato podría considerarse como una violación al Código de Etica Judicial que amerita la imposición de sanciones disciplinarias. In re Hon. Díaz García, T.P.I., 158 D.P.R. 549, 558-559 (2003). Para que se justifique la destitución de un juez que incurre en este tipo de errores, tiene que demostrarse que el error cometido constituyó un abuso intencional de la discreción judicial o que su magnitud demuestra un favoritismo o una conducta impropia hacia al-guna parte. In re Jackson Sanabria, 97 D.P.R. 1 (1969).
Debe quedar claro que no se puede invocar nuestra jurisdicción disciplinaria para que pasemos juicio sobre un dictamen judicial, en sustitución de los mecanismos de revisión que nuestro ordenamiento jurídico provee. Por ello, en respeto a la independencia de nuestros jueces y nuestras juezas para decidir, enmendamos recientemente la Regla 3 de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B, para *850 consignar que “no será investigada aquella queja o solici-tud de separación que ... (b) pretenda intervenir impropia-mente con determinaciones judiciales ...”. Véase In re Emda. R. 3 Disciplina Judicial, 182 D.P.R. 533, 537 (2011).
Ahora bien, la misma Regla 3 de Disciplina Judicial, supra, señala que podemos disciplinar a un juez o una jueza por “(a) [violación a la ley, a los Cánones de [E]tica Judicial, al Código de [É]tica Profesional, a las órdenes y normas administrativas aplicables [y] por negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales ...”. Al respecto, hemos señalado que “las motivaciones indebidas y antiéticas que causen la demora en el trámite de uno o más casos” puede dar lugar a sanciones disciplinarias contra un juez o una jueza. In re Pagani Padró, 181 D.P.R. 517, 530 (2011). También pro-cede el ejercicio de nuestra jurisdicción disciplinaria si se demuestra “un patrón de incompetencia manifiesta del juez o de la jueza en el desempeño de sus funciones judiciales”. Id.
C. Cánones de Ética Judicial
Nuestra Constitución confiere autoridad a esta Alta Curia para llevar a cabo los procedimientos disciplinarios relacionados con los jueces y las juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Art. V, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. A esos efectos, aprobamos los Cánones de Etica Judicial, 4 L.P.R.A. Ap. IV-B. Estos imponen a los jueces y a las juezas una serie de deberes para promover la confianza del Pueblo en nuestro sistema judicial y mantener la fe de la ciudadanía en la justicia. In re Claverol Siaca, 175 D.P.R. 177, 188 (2009); In re González Acevedo, 165 D.P.R. 81, 91-93 (2005). A la jueza Sierra Enríquez se le imputa haber violado los Cánones 4, 8, 9 y 14 de Etica Judicial, supra. Veamos qué disponen.
El Canon 4 de Etica Judicial, supra, impone a los *851 jueces y a las juezas las siguientes obligaciones adminis-trativas:
Las juezas y los jueces cumplirán cuidadosa y diligente-mente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial. Tam-bién cumplirán diligentemente las normas y órdenes adminis-trativas pertinentes de la Oficina de Administración de los Tribunales.
Más adelante, el Canon 8 del mismo cuerpo legal, supra, atiende el desempeño de los jueces y las juezas en sus fun-ciones adjudicativas. En lo pertinente, establece lo si-guiente:
Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, pre-siones, amenazas o interferencias, ya sean directas o indirec-tas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del De-recho y en la diligencia orientada hacia el empeño de descu-brir los hechos esenciales de cada controversia.
Al respecto, hemos expresado que esta norma discipli-naria busca evitar que los jueces o las juezas tomen deci-siones “ensoberbecidos por el poder”. In re Cruz Aponte, supra, pág. 180. Asimismo, como puede apreciarse, este canon impone a los magistrados y a las magistradas la obli-gación de mantenerse al día en el estudio del Derecho. También, ordena que sean diligentes en descubrir todos los hechos esenciales de cada controversia.
Con relación a lo anterior, el Canon 9 de Ética Judicial, supra, dictamina, en lo pertinente:
Las juezas y los jueces concederán a toda persona que tenga interés en un procedimiento o [a] la abogada o al abogado de dicha persona el derecho a ser oída conforme lo dispone la ley. En el cumplimiento de este deber, resolverán cada controver- *852 sia fundamentándose en su propia evaluación de la prueba presentada. Los jueces y las juezas no permitirán que el re-clamo por las partes de sus derechos constitucionales y esta-tutarios influya negativamente al hacer sus determinaciones judiciales.
En los comentarios de esta norma ético-disciplinaria, expresamos que el reconocimiento del derecho de la persona a ser oída enfatiza la importancia de que los magis-trados y las magistradas garanticen el debido proceso en el desempeño de la función adjudicativa. Así pues, las juezas o los jueces que penalizan a una parte por el hecho de que esté reclamando aquello a lo que cree que legítimamente tiene derecho, actúan ilícitamente, proyectan falta de imparcialidad y podrían incurrir en una conducta antiética. In re Díaz García, 158 D.P.R. 549, 557-558 (2003). Parti-cularmente, para que un error de hecho o de derecho configure una conducta antiética violatoria de este Canon 9, se requiere probar que el error cometido constituyó un abuso intencional de la discreción judicial, o que fue de tal mag-nitud que reflejó conducta impropia o favoritismo. Id.
Por último, el Canon 14 de Etica Judicial, supra, sobre conducta en los procedimientos judiciales, establece:
En el curso de los procedimientos judiciales, las juezas y los jueces mantendrán su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco harán comentarios ni gestos ajenos al pro-ceso judicial, entendiéndose comprendidos dentro de esta pro-hibición, aquellos comentarios, expresiones o gestos que en-vuelvan burla o mofa. No ridiculizarán de modo alguno a abogadas, abogados, partes, testigos, funcionarías o funciona-rios del tribunal ni a otras personas que acudan ante el tribunal.
Las juezas y los jueces dirigirán los trabajos del tribunal con orden y decoro, y evitarán todo proceder que pueda afectar la dignidad y el respeto debido [s] al tribunal. Intervendrán para impedir cualquier conducta impropia de las partes, las aboga-das y los abogados o cualquier otra persona, y tomarán las ac-ciones que procedan de acuerdo con la ley, los Cánones del Có-digo de [É]tica Profesional y las mejores tradiciones del sistema judicial.
*853 En cuanto al aspecto procesal de los procesos disciplinarios, la Regla 14 de nuestro Reglamento —In re Reglamento Tribunal Supremo, 183 D.RR. 386, 419-420 (2011)— provee para la designación de un Comisionado Especial que celebre una vista para recibir la prueba. Asimismo, la Regla 12 de Disciplina Judicial dispone para la creación de una Comisión de Disciplina Judicial que auxilie al Tribunal en el ejercicio de su responsabilidad en asuntos de disciplina de jueces o juezas. In re Aprobación Reglas, 164 D.P.R. 137, 147 (2005).
Hemos sostenido reiteradamente que las determinaciones de hecho que un comisionado especial baga en un procedimiento disciplinario merecen nuestra deferencia. In re Ruiz Rivera, 168 D.P.R. 246, 278 (2006); In re Saavedra Serrano, 165 D.P.R. 817, 829 (2005). Así pues, hemos expresado que este Tribunal no alterará las determinaciones de hecho de la Comisión, a no ser que medie pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. Id. Por otra parte, no estamos obligados a aceptar las recomendaciones del Comisionado Especial sobre la querella disciplinaria. In re Muñoz, Morell, 182 D.P.R. 738, 749 — 750 (2011); In re Hon. Maldonado Torres, 152 D.P.R. 858, 869 (2000).
Cabe señalar, además, que para imponer sanciones dis-ciplinarias, nuestro ordenamiento ético disciplinario re-quiere que haya prueba clara, robusta y convincente de que hubo violaciones éticas. In re Muñoz, Morell, supra; In re Caratini Alvarado, 153 D.P.R. 575, 585 (2001).
HH HH t — <
En el primer cargo se le imputa a la jueza Sierra Enrí-quez disuadir al señor Virella Marín a autorepresentarse y desatender los reclamos de este para que se le asignara una representación legal de oñcio. Además, se le imputa hacer total abstracción del Reglamento para la Asignación *854 de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, lo que violó los derechos constituciona-les del querellante y vulneró su debido proceso de ley. Asi-mismo, se le imputa incumplir con su deber ético de ser cuidadosa y rigurosa en el estudio y la aplicación del derecho. Por todo lo anterior, la Comisión de Disciplina Judicial encontró que la querellada infringió los Cánones 4 y 8 de Etica Judicial, supra.
La jueza Sierra Enríquez admitió haber violado el Canon 4 cuando incumplió con el procedimiento reglamenta-rio de asignación de abogados de oficio. Por consiguiente, no analizaremos su cumplimiento con las disposiciones del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal.
Por otro lado, la querellada no admitió haber violado el referido Canon 8, que impone el deber de ser rigurosa en el estudio y en la aplicación del Derecho. De un análisis de los hechos de este caso se desprende que la jueza Sierra Enríquez desconocía aspectos elementales del procedi-miento criminal. En la primera vista en contra del señor Virella Marín, la querellada le cuestionó si por el hecho de comparecer por derecho propio estaba renunciando a abo-gado y al derecho contra la autoincriminación. Asimismo, le cuestionó al señor Virella Marín cómo iba a contrainte-rrogar y a contrainterrogarse. Incluso, la jueza Sierra En-ríquez preguntó a la Fiscal Cancio “¿cómo podría este se-ñor entonces representarse a sí mismo en un caso criminal ... como este?”. Transcripción de evidencia de 3 de noviem-bre de 2008, pág. 2-3. Luego, se dirigió al señor Virella Marín y expresó: “no veo cómo usted se pueda representar a sí mismo en un caso criminal sin que se auto incrimine”, íd., pág. 3.
En el segundo cargo se le imputa a la querellada menos-cabar los derechos del querellante al no darle la oportuni-dad de explicar o rebatir lo expresado por la licenciada Maldonado Rivera en cuanto a que ella no era su abogada. *855 Por ello se le imputa haber violado los Cánones 8 y 9 de Ética Judicial, supra. Estos exigen al juez o a la jueza que ejerza “diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia” —Canon 8, supra— y conceder a toda persona “el derecho a ser oída Canon 9, supra.
De la transcripción de la segunda vista celebrada contra el señor Virella Marín surge que este sostuvo que la licen-ciada Maldonado Rivera era su representante legal y que ella no estaba presente, pero que ella le había informado que solicitaría que se citara el caso para una fecha posterior. Luego, la licenciada Maldonado Rivera hizo una comparecencia especial ante el tribunal en la que confirmó que el querellante estuvo por su oficina y que lo orientó como parte de los servicios brindados en la División Legal del Municipio de Manatí. Acto seguido, dijo lo siguiente:
Se le advirtió que el caso nosotros no lo estábamos aceptando y que tomaríamos ... nosotros teníamos otro asunto en la ma-ñana de hoy y que en caso de que lo pudiéramos representar, debido a que teníamos otros 4 asuntos en Arecibo, le orien ... le diríamos y le advertimos que también buscara representa-ción porque ya usted le había dado otra oportunidad!.] Trans-cripción de evidencia de 26 de enero de 2009, págs. 5.
A pesar de la ambigüedad de las expresiones antes cita-das, la jueza Sierra Enríquez procedió inmediatamente a concluir que el señor Virella Marín había mentido. Así pues, le impuso pena por desacato sin brindarle la oportu-nidad de expresar su versión al respecto.
Tal y como lo concluyó la Comisión de Disciplina Judicial, el expediente demuestra que pudo haber surgido un error en la comunicación entre el señor Virella Marín y la licenciada Maldonado Rivera que produjera una confusión de buena fe sobre si esta última asumiría la representación legal del entonces acusado o no. Así, ante los hechos de este caso, la jueza Sierra Enríquez debió brindarle al señor Vi-rella Marín la oportunidad de reaccionar a lo expresado por la abogada, para entonces evaluar ambas posiciones y *856 adjudicar. En cambio, la querellada procedió a concluir que el señor Virella Marín mentía y actuó airadamente, sin mayor reflexión al respecto.
En el tercer cargo se le imputa a la jueza Sierra Enrí-quez mostrar impaciencia y severidad excesiva contra el querellante, en violación a los derechos fundamentales de este. Ello en contravención del Canon 14 de Etica Judicial, supra.
Al examinar la transcripción de los procedimientos que dieron origen a la querella ante nos, surge que la jueza Sierra Enríquez actuó de forma atropelladora contra el se-ñor Virella Marín. Desde el inicio de la primera vista cele-brada el 3 de noviembre de 2008, este se dirigió respetuo-samente a la jueza Sierra Enríquez para solicitar la citación de varios testigos. En cambio, la querellada lo in-terrumpió para indagar sobre quién lo estaba representando. Al acusado responder que comparecía por derecho propio, la magistrada le impidió representarse bajo la premisa errada de que no podía hacerlo sin incriminarse.
Luego, la jueza Sierra Enríquez preguntó al señor Vire-lla Marín de qué vivía, a lo que este respondió que recibía una compensación militar. Con esta mínima información, la jueza querellada concluyó inmediatamente que el enton-ces acusado tenía dinero suficiente para contratar un abogado. Ello sin preguntar sobre la cantidad de la com-pensación ni la cantidad de dependientes que este mantenía. Es decir, la jueza Sierra Enríquez no indagó ni llevó a cabo examen alguno sobre la alegación de indigen-cia del querellante. Al enfrentarse a la inferencia equivo-cada de la magistrada, el señor Virella Marín intentó acla-rar que no tenía dinero suficiente para contratar una representación legal. Sin embargo, la jueza querellada pro-cedió a cambiarle la premisa indicando: “¿no tiene? O sea, ¿usted se reitera que no va a contratar abogado?”. Trans-cripción de evidencia de 3 de noviembre de 2008, pág. 3.
*857 Ante estas insinuaciones de la jueza querellada sobre su capacidad económica y la falta de representación legal, el señor Virella Marín optó finalmente por expresar que rea-lizaría los trámites para conseguir un abogado. Además, la jueza Sierra Enríquez advirtió que tenía que cumplir con lo anterior “so pena de desacato”.
Días después, el señor Virella Marín presentó una mo-ción por derecho propio solicitando al tribunal que le asig-naran un abogado, ya que su situación económica no le permitía contratar un abogado de la práctica privada. En esta detalló que había hecho gestiones para recibir repre-sentación legal por su condición de indigente, pero que es-tas habían sido infructuosas. En específico, señaló que acu-dió a la Oficina de Servicios Legales de Manatí y de Arecibo, y a las oficinas Pro Bono. Incluso, detalló que re-cibía una mensualidad de novecientos sesenta y dos dóla-res, y que tenía cinco dependientes. Sin embargo, la jueza querellada denegó de plano esta solicitud sin realizar eva-luación alguna sobre la alegación de indigencia del señor Virella Marín y sin atender su invocación del derecho cons-titucional a que se le asignara un abogado.
Diez días después de esta denegatoria, el señor Virella Marín presentó diligentemente una segunda moción por derecho propio, en la cual solicitó las razones por las cuales no fue aprobada su solicitud de asignación de un abogado. La jueza Sierra Enríquez denegó nuevamente su moción.
Como puede apreciarse, mediante estas dos mociones, el señor Virella Marín puso en posición a la jueza Sierra En-ríquez para realizar una determinación informada sobre si este tenía capacidad económica para contratar representa-ción legal. Además, demostró las gestiones afirmativas que había realizado para cumplir con el mandato de la jueza querellada. Sin embargo, la magistrada ignoró las alega-ciones de indigencia del señor Virella Marín y su invoca-ción del derecho constitucional de que se le asignara un abogado.
*858 Llegado el día de la segunda vista, el señor Virella Ma-rín alegó estar representado por la licenciada Maldonado Rivera. Sin embargo, esta última negó ser su abogada me-diante explicaciones ambiguas. Ante esto, la jueza Sierra Enríquez no se preocupó por escuchar la versión del acu-sado sobre el asunto, a pesar de que lo que este había ex-presado sobre el motivo de la ausencia de la licenciada Maldonado Rivera en la mañana fue compatible con las explicaciones brindadas por el abogado que la sustituyó y por ella. De esta manera, la querellada adjudicó el asunto sin evaluar la posición de ambas partes. Peor aún, a pesar de que otros abogados que estaban presentes en la Sala pudieron haber sido asignados para representar en ese mo-mento al señor Virella Marín, la jueza querellada se negó expresamente a hacerlo.
Luego de este proceder atropellador, la jueza Sierra En-ríquez emitió una orden de desacato contra el señor Virella Marín por este supuestamente haber mentido al tribunal. Originalmente, la penalidad consistía en una multa económica. Apenas unos minutos después, la querellada reconsideró motu proprio su decisión y aumentó la pena, condenando al señor Virella Marín a diez días de cárcel. Además, le advirtió que si no comparecía a la próxima vista representado por un abogado, volvería a ordenar su encarcelamiento por otros diez días.
Asimismo, la jueza Sierra Enríquez emitió otra orden de desacato sumario contra el querellante por este haber com-parecido sin representación legal. Esto, a pesar de que el señor Virella Marín había demostrado sus múltiples dili-gencias para acatar la orden del Tribunal. La penalidad consistió en una multa de quinientos dólares o un día de cárcel por cada cincuenta dólares que dejara de pagar. Ello pudo haber conllevado una condena de diez días adiciona-les en la cárcel. La jueza querellada impuso este desacato sin asignarle algún abogado en sala para que defendiera al señor Virella Marín en cuanto a esta decisión.
*859 Respecto a su encarcelamiento, el señor Virella Marín alegó en su queja juramentada que sintió temor por su seguridad mientras estuvo preso, pues fue identificado como ex miembro de la Policía por otros confinados. Ade-más, la condena que sufrió tuvo el efecto de que se suspen-dieran sus beneficios de Seguro Social, como señalamos.
Indubitadamente, la totalidad de las circunstancias que caracterizaron los procedimientos judiciales en contra del señor Virella Marín demuestra que la jueza Sierra Enrí-quez violó el Canon 14 de Etica Judicial, supra, pues mos-tró impaciencia y severidad excesiva. Consiguientemente, no mantuvo su conducta dentro de la debida propiedad y circunspección. Con su proceder, la querellada hizo caso omiso al llamado a los jueces y a las juezas a mantener el temperamento judicial y a no actuar ensoberbecidos de poder. In re Rodríguez Plaza, 182 D.P.R. 328, 346 (2011). Ciertamente, la conducta de la jueza Sierra Enríquez tras-cendió los límites de un mero error de derecho revisable mediante un recurso apelativo.
Cabe destacar que, según surge de la transcripción de las vistas, el señor Virella Marín siempre se condujo hacia el tribunal con el mayor respeto. Nunca se expresó de forma alterada o grosera.

Debemos enfatizar, además, que nuestra conclusión no se basa únicamente en la imposición de ambos desacatos criminales. De ninguna manera deben interpretarse nues-tros pronunciamientos en menoscabo de la facultad que tie-nen los jueces y las juezas para vindicar la autoridad del tribunal mediante este mecanismo. Más bien, nuestra con-clusión se fundamenta en el proceder atropellado y la falta de temperamento de la jueza querellada, evidenciados por la totalidad de las circunstancias que caracterizaron el pro-cedimiento criminal en contra del señor Virella Marín desde su inicio hasta el encarcelamiento de este último.

Aclarado lo anterior, estamos de acuerdo con la determi-nación de la Comisión de Disciplina Judicial de que la *860 jueza Sierra Enríquez violó los Cánones 4, 8, 9 y 14 de Ética Judicial, supra. Al examinar el expediente, no encon-tramos razón alguna por la cual apartarnos de las deter-minaciones de hecho y conclusiones de derecho de la Comisión. Aunque los hechos de este caso constituyen un acto aislado dentro de la carrera judicial de la jueza Sierra Enríquez, coincidimos con la Comisión en que “la falta co-metida es de tal magnitud que atenta contra la fibra misma de nuestro sistema de justicia y quebranta la con-fianza que debe promover el sistema en la imparcialidad de los magistrados”. (Énfasis suplido). Informe de la Comi-sión, pág. 26. Tal y como señala la Comisión, la conducta de la querellada es injustificable, ya que no fue un acto impul-sivo en un momento de coraje. En cambio, constituyó un patrón de violación crasa al debido proceso del señor Vire-11a Marín. La querellada pudo haber corregido su error, pues celebró varias vistas y tuvo ante sí dos mociones en las cuales pudo rectificar su proceder. Sin embargo, no lo hizo.
Más aún, las acciones de la jueza Sierra Enríquez toma-ron lugar en un momento en que la Rama Judicial está tomando medidas afirmativas para promover el acceso a la justicia, facilitando la autorepresentación en estos tipos de casos. Véase Informe de la Rama Judicial de Puerto Rico 2007-2011, pág. 25. Ello, debido a que un número creciente de personas están tomando la decisión de acudir a los tribunales por derecho propio, motivados por razones que va-rían desde la falta de recursos económicos para contratar abogados hasta la percepción de que la controversia puede resolverse con éxito mediante la comparecencia por dere-cho propio. Id.
IV
Por todo lo anterior, es forzoso concluir que la jueza Sierra Enríquez violó los Cánones 4, 8, 9 y 14 de Ética Judi *861 cial, 4 L.P.R.A. Ap. IV-B. Consiguientemente, suspendemos a la Hon. Gloria M. Sierra Enriquez de empleo y sueldo por el término de un mes.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez y el Juez Asociado Señor Feliberti Cintrón no intervienen. La Jueza Asociada Señora Pabón Charneco no intervino.

(1) “Toda persona que por medio del teléfono, o del correo electrónico, o por cualquier otro medio profiera o escriba a otra lenguaje amenazante, abusivo, obsceno o lascivo; o que con el propósito de molestar a cualquier persona efectúe repetida-mente llamadas telefónicas u ocasione que el teléfono de otra persona dé timbre repetidamente, o toda persona que autorice con conocimiento que cualquier teléfono bajo su control sea utilizado para cualquier propósito prohibido en esta sección, in-currirá en delito menos grave”.

(2) La Moción por Derecho Propio de 26 de noviembre de 2008 dice: “Por este medio Solicito de [sic] tribunal de Manatí se me acine [sic] un abogado para el día 22 *838 enero 2009 a las 8:30 AM ya que mi situación económica [sic] en este momento no es favorable para pagar un abogado de la practica [sic] privada. Se hicieron gestione [sic] en la oficina Servicio [sic] legales de Manati [sic] y arecibo y probono indicán-dome soy [sic] elegible para los servicio [sic] de abogado pero la mensualida [sic] que recibo $962:00 [sic] para 5 persona [sic] pero que no me podián [sic] reprecental [sic] por ser un delito meno [sic] grave”.