*In re* LUIS G. SAAVEDRA SERRANO, querellado.

*Número:* AD-2003-3          *Resuelto:* 19 de octubre de 2005

*Aida N. Molinary de la Cruz,* presidenta de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones; *María C. Marina Durán* y *Zenaida Gaud Negrón,* asesoras legales de la Oficina de Administración de los Tribunales; *Felipe Benicio Sánchez* y *José A. Bravo Abreu,* abogados del querellado.

PER CURIAM: El Lcdo. Luis G. Saavedra Serrano fue admitido al ejercicio de la abogacía el 1ro de noviembre de 1977. El 24 de febrero de 1978 fue nombrado Juez Municipal del Tribunal de Primera Instancia. Posteriormente, el 24 de julio de 1992 fue nombrado Juez Superior. Desde entonces ejerció su cargo en varias de las regiones judiciales del País hasta el 21 de octubre de 2003, cuando expiró el término para el cual había sido nombrado.

Rafael González Salas presentó una queja juramentada en la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT) contra Saavedra Serrano quien, en ese momento, fungía como Juez Superior del Centro Judicial de Carolina. En la referida queja el señor González Salas alegó que el 9 de septiembre de 2002, durante una vista de determinación de causa probable por un delito menos grave,[1] el entonces juez Saavedra Serrano lo trató en forma despectiva y humillante, haciendo comentarios que no tenían que ver con el proceso, los cuales constituyeron una falta de respeto hacia su persona. Alegó, además, que el juez Saavedra Serrano le impuso un desacato sumario de noventa días de cárcel, el cual consideró injusto y desproporcionado.

La OAT evaluó la grabación de los procedimientos y la evidencia contenida en declaraciones juradas y otros documentos, luego de lo cual rindió un informe de investigación. Determinó la referida oficina que, de las de-

---

[1] *Pueblo de Puerto Rico v. Rafael González Salas,* CR2002-969, en el Tribunal de Primera Instancia, Sala Superior de Carolina.

claraciones juradas tomadas y de la evidencia documental obtenida, existía evidencia suficiente para establecer que el juez Saavedra Serrano había violado los Cánones I, XI, XVII, XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A, y los Cánones 9 y 15 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Sostuvo la OAT, además, que a base de la investigación realizada, la conducta observada por Saavedra Serrano, tanto en lo personal como en lo profesional, ameritaba su destitución como juez. El informe fue remitido con toda la prueba documental a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones (Comisión).

Luego de recibir el referido informe, la Comisión fue informada que el nombramiento del juez Saavedra Serrano como Juez Superior había expirado el 21 de octubre de 2003, por lo cual solicitó de la OAT que le informara su posición respecto a si los hechos imputados en el informe constituían una posible violación a los Cánones 9, 15 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. La OAT así lo hizo, y el 20 de febrero de 2004 presentó un informe de investigación enmendado ante la Comisión, en el cual indicó que entendía que los hechos alegados en la queja efectivamente constituían una violación a los Cánones 9, 15 y 38 del Código de Ética Profesional, ante.

En virtud del referido informe, la Comisión designó, para la correspondiente determinación de causa, al Lcdo. Ramón García Santiago como Comisionado. Éste, luego de la evaluación del informe, determinó causa probable para continuar con el procedimiento disciplinario y para que se presentara la querella contra el Lcdo. Luis G. Saavedra Serrano por violación al Código de Ética Profesional.

En vista de ello, el 3 de mayo de 2004 la OAT presentó una querella ante la Comisión en la cual se le imputan al licenciado Saavedra Serrano tres cargos *por violaciones a*

*los Cánones 9, 15 y 38 del Código de Ética Profesional,* ante.(²)

En su contestación, el licenciado Saavedra Serrano alegó, en síntesis, que los hechos sobre los que versa la querella no son constitutivos de violación a los cánones de ética profesional imputados y que, ante la conducta agresiva y desafiante del acusado, en la Vista de 9 de septiembre de 2002 se vio en la obligación de hacer valer la dignidad del tribunal y el respeto que deben tener las personas cuando asisten allí. Sostuvo, además, que actuó de manera caballerosa, justa, firme y sin temor, al no permitir en corte abierta que un desajustado mental lo provocara a él, como juez, a la parte perjudicada y a los testigos. Sobre el desacato impuesto al querellante, alegó que este respondía

---

(²) Los cargos imputados, en síntesis y en lo pertinente, son los siguientes:

"Primer Cargo

"La conducta del licenciado Saavedra fue contraria a la exigida por el Canon 9 de los de Ética Profesional, en términos de la falta de respeto y del orden que debe prevalecer en los tribunales. El licenciado Saavedra impidió la buen[a] marcha de los procedimientos en el caso que se ventilaba ante su presencia. La actitud del licenciado Saavedra abusó de su prerrogativa y su desempeño general durante la celebración de esta vista, no fue propio y violó la actitud cortés y respetuosa que exige este Canon.

"Segundo Cargo

"El licenciado Saavedra no honró el respeto y consideración que exige el Canon 15 de los de Ética Profesional. Se advierte al escuchar la vista e incluso al leer la transcripción de la misma cierta animosidad y hasta perjuicio en el trato del licenciado Saavedra hacia el querellante. Este trato provocó que el querellante se sintiera hostigado al punto que presentó la queja ante la Oficina de Asuntos Legales. Además, el tono de voz del licenciado Saavedra contiene cierto cinismo, fue exagerado en su insistencia del modo que el querellante debía referirse a él. Estos hechos toman relevancia ante la realidad de que el querellante se encontraba en desventaja, no sólo por la falta de representación profesional[,] sino por su condición emocional.

.     .     .     .     .     .     .

"Tercer Cargo

"Los hechos constitutivos de esta querella demuestran que el licenciado Saavedra se apartó del contenido del Canon 38 de los de Ética Profesional al dejar de exaltar el honor y la dignidad que reviste la profesión legal. El resultado del incidente que provoca esta querella se alej[a] de la *'cabal aportación hacia la consecución de una mejor administración de la justicia'*. Al igual que el cargo anterior, el licenciado Saavedra se apartó de una conducta digna y honorable que exige la profesión legal.

"Esta actuación violó el Cano[n] 38 de Ética Profesional." Informe de la Comisión de Disciplina Judicial de 13 de junio de 2005.

a la gravedad de la conducta desafiante y amenazante del acusado querellante.

La Comisión celebró vistas evidenciarias los días 26 de enero y 23 de febrero de 2005, en las cuales tanto la OAT como el abogado querellado ofrecieron prueba testifical y documental.[3] Tras la celebración de la primera vista evidenciaria, la Comisión estimó pertinente citar al Dr. Rafael Cabrera Aguilar, psiquiatra forense del Estado, quien había tenido la oportunidad de evaluar la condición psiquiátrica del querellante González Salas. En su testimonio, el doctor Cabrera Aguilar indicó que González Salas presentaba un desorden paranoide y que, a su juicio, éste no se encontraba apto para testificar ante la Comisión. Luego de celebradas las vistas, la Comisión emitió su informe con su relación del caso, determinaciones de hecho y recomendación.[4] Habiendo quedado sometido el caso ante nuestra consideración y contando con el informe de la Comisión y el alegato del abogado querellado, *procedemos a resolver.*

## I

Los hechos que dieron lugar a la presentación de la querella contra el licenciado Saavedra Serrano ocurrieron el 9 de septiembre de 2002 mientras presidía el juicio en su fondo en el caso *Pueblo de Puerto Rico v. Rafael González*

---

[3] Entre la prueba documental ofrecida y admitida se encuentran la copia de la transcripción de la vista celebrada el 9 de septiembre de 2002 y la minuta del juicio en su fondo celebrado ese mismo día ante el juez Saavedra en *Pueblo de Puerto Rico v. Rafael González Salas*, CR2002-969, en el Tribunal de Primera Instancia, Sala Superior de Carolina. También se admitió en evidencia la minuta de la vista de procesabilidad celebrada el 25 de septiembre de 2002 ante el juez Dimas G. Padilla Bruno, y las evaluaciones siquiátricas de González Salas realizadas por el Dr. Rafael Cabrera Aguilar.

[4] En dicho informe, la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones (Comisión) determinó, *en síntesis*, que la conducta en que incurrió Saavedra Serrano, actuando como juez, era violatoria de los Cánones I, XVII y XXVI *de Ética Judicial*, 4 L.P.R.A. Ap. IV-A; determinó, *sin embargo*, que sus conducta *no* violaba los Cánones 9, 15 y 38 del Código *de Ética Profesional*, 4 L.P.R.A. Ap. IX, razón por la cual recomendó eximir, como abogado, a Saavedra Serrano.

*Salas,* CR2002-969, en el Tribunal de Primera Instancia, Sala Superior de Carolina, en que se ventilaba una infracción al Art. 53 del Código Penal, 33 L.P.R.A. sec. 4194 (amenaza).

De un análisis, tanto de la transcripción de la vista, como del Informe de la Comisión, se deduce que, llamado el caso, el entonces juez Saavedra Serrano preguntó si el nombre del acusado era Don Rafael González Salas, a lo que este contestó "sí señor, eso es así". Inmediatamente, el juez replicó: "No, a mí no me interesa que eso sea así o no, la pregunta es si es usted", luego de lo cual, el juez le advirtió que siempre se dirigiera a él como "sí señor o no señor".

El querellado procedió a preguntarle a González Salas si él tenía representación legal. Este último le explicó al querellado que no contaba con suficientes recursos económicos para sufragar dicha representación, por lo cual había realizado varias gestiones para obtener representación legal, pero que los trámites habían resultado infructuosos, ya que en Asistencia Legal no atendían casos menos graves y que en la Clínica Legal de la Universidad de Puerto Rico sólo atendían casos de San Juan, no de Carolina. A esto, el juez Saavedra contestó: "acaba de descubrir lo que el Tribunal sabe hace mucho tiempo."

Acto seguido, el querellado le indicó a González Salas que tenía que buscar un abogado y traerlo a sala *dentro de diez minutos*, a lo que el acusado le informó que *no podía pagarlo.* Entonces, el juez le respondió:

> "Yo lo lamento, *lo va a tener que hacer, señor*, le voy a explicar por qué. Simplemente y llanamente yo no tengo elementos ninguno para juzgar si usted es indigente o no, y porque si usted se para ahí no va a conseguir que yo le asigne un abogado, de esa forma no. ¿Me entendió, señor?"[5] (Énfasis suplido.) Memorando de Derecho, pág. 3.

González Salas respondió con un simple "sí", a lo que el

---

[5] Vale la pena destacar que más adelante el juez preguntó a González Salas a qué se dedicaba, a lo que éste contestó que era vendedor de perfumes, sin lugar fijo de trabajo, y que en ese momento no estaba realizando ventas.

juez le contestó con un "sí, ¿qué?". El querellante contestó que había entendido. Seguido, el juez Saavedra Serrano volvió a exigir que el acusado se dirigiera a él como "señor".

Luego, el querellado procedió a dirigirse al acusado de esta forma:

"... Mire, Don Rafael, perdóneme, usted tiene un delito aquí de amenaza y me está enseñando quizás lo que no debería. Yo le estoy *advirtiendo*, y se lo estoy diciendo muy claramente, mi deseo es ser justo con usted, ser correcto con usted, pero no son sus normas, son las mías. *Segundo, aquí puede entrar por una amenaza y salir preso por un desacato.* Le voy a rogar, *tenga cuidado como me habla, porque yo meto preso a la menor provocación*[,] *puede verificarlo por ahí*, no es mi deseo, yo no disfruto ... *pero en mi Sala se va a*[com]*portar con la decencia que corresponde a las buenas o a las malas.*" (Énfasis suplido.) Memorando de Derecho, pág. 3.

Luego, el juez Saavedra Serrano expresó que si el acusado seguía insistiendo en tratarlo de otra forma que no fuese de "usted", *él iba a entender que se estaba retando su autoridad y específicamente le dijo: "y va a ir preso, yo se lo puedo garantizar, Don Rafael, se lo puedo garantizar."*

El juez procedió a recomendarle nuevamente al acusado que siguiera sus instrucciones y consiguiera un abogado que velara por sus intereses y derechos. Luego de esto expresó:

"Pues bien. Don Rafael, *tiene 10 minutos*, consiga un abogado y favor, Rafael, verifique en qué sala está, se lo voy a rogar, porque *es la última paciencia que voy a tener con usted, la última.* Ya yo le expliqué lo que hay, si usted no lo quiere entender, por favor, *lo va a lamentar*, se lo digo de corazón. ¿Entendió señor?"

Luego de estos incidentes, el juez Saavedra Serrano asignó el caso para un turno posterior, mientras González Salas conseguía un abogado que lo representase. Cuando el caso fue llamado en segunda ocasión, el acusado le informó al juez Saavedra Serrano que *había hablado* con un abogado para que lo representase, pero que en ese momento no se encontraba en sala.

El juez Saavedra Serrano respondió lo siguiente:

"Pues tiene hasta las 2:00. *Pero Don Rafael, va a tener un abogado en el día de hoy, téngalo por seguro, yo le di una orden, consígalo* .... Pero aquí en esta sala usted no puede seguir hablando conmigo sin abogado, por qué razón, porque señor aquí se graba, y si usted dice lo que no debe, hace lo que no puede, *solito se mete preso,* para eso están los abogados y ciertamente usted tiene que tener uno. ¿Me ha entendido, señor?" (Énfasis suplido.) Memorando de Derecho, pág. 3.

El acusado contestó con un "sí, señor" y el Juez prosiguió, advirtiéndole lo siguiente:

"O sea, aquí, Don Rafael, quizás usted no se da cuenta, están pasando casos de gente acusada de asesinato. O sea, yo veo casos donde la gente se coge 200 años de cárcel, 300. *Usted tiene un menos grave, no trate de buscarse un desacato conmigo porque es innecesario, porque yo castigo.* Y también soy muy dado a conceder remedios, como la absolución que usted acaba de ver. Pero no se me cuadre porque ninguno se ha levantado, hágame ese favor, *porque yo me conozco, y estoy hablando bajito, cualquier abogado sabe lo que eso significa, usted viene sumiso y demuestra deferencia hacia mí, está bien. Pero si cree que va a montar un "show" de la calle aquí conmigo, señor, se equivocó.* Se lo digo. Señor, yo llevo casi 25 años, *no lo haga. Venga con sumisión,* se le garantizan sus derechos, su debido proceso, se le sirve con todo gusto, *pero no me traiga su actitud de la calle.* Hágase un favor y hágamelo a mí." (Énfasis suplido.) Memorando de Derecho, págs. 3–4.

En ese momento, el Lcdo. Samuel Nieves Rodríguez intervino y ofreció representar al acusado. El juez le inquirió que si estaba dispuesto a representar a González Salas, a lo que el licenciado Nieves Rodríguez indicó que sí lo haría. No obstante, el juez especificó que *no se lo estaba asignando de oficio,* a lo que el licenciado Nieves Rodríguez contestó que no cobraría honorarios por dicha representación. Acto seguido, el juez le indicó al abogado:

"... hable con él porque *yo noto que don Rafael está desorientado, me parece que él no sabe dónde está* y digo esto ... *con quién está bregando.*" (Énfasis suplido.) Memorando de Derecho, pág. 4.

El juez procedió a preguntarle al acusado si aceptaba

que el licenciado Nieves Rodríguez asumiera su representación legal. González Salas contestó "sí, señor". A continuación, las expresiones emitidas por el juez, inmediatamente después:

> "Mire, don Rafael, usted sabe por qué aquí lo tratamos así, porque a pesar de que *yo tengo su libertad en mis manos, porque ese es mi poder y mi autoridad,* yo trato a todo el mundo, damas, señor, usted, señora, Don, y usted no puede venir a tratar al tribunal de otra forma porque el tribunal lo está tratando así." (Énfasis suplido.) Memorando de Derecho, págs. 4–5.

Surge de la transcripción de la vista y del propio informe de la Comisión que es *en este momento,* o sea, luego de este comentario del juez Saavedra Serrano, que el acusado pierde totalmente el control sobre sus expresiones y comportamiento, alterándose en sala y expresando que se estaba cometiendo un gran abuso e injusticia. Algunas de estas expresiones fueron:

> "Okay, espérese, espérese un momento, un momento, no, no, ya me cansé, ya me cansé de esto, no, no, no.
> "Claro abusen, abusen, claro, abusen. Pero ya no me voy a someter y a humillar a más abusadores como ustedes ....
> "Usted está cometiendo un gran abuso, pero hágalo, pero no me voy a someter más ni a usted ni a ningún juez que venga a humillarme. Puede arrestarme o puede hacer lo que sea ....
> "No, no, no, no señor, ni a usted ni a ningún juez me le voy a humillar jamás en la vida, ya me han 'jodío demasiao' veces en la vida y usted va a ser el último. No se preocupe, porque yo estoy aquí, me las va a pagar toditas juntas ....
> "Repito, repito, a mí me chocaron el carro, se negaron a pagarme, fui y le caí encima al individuo y lo amenacé, eso es verdad, eso es absolutamente verdad. Entonces el individuo me ha metido aquí, claro, entonces la corte no lo obliga a que me pague los daños de mi carro pero me mete preso. Mire, puede enviarme, puede enviarme años de cárcel, pero jamás me voy a humillar, jamás en la vida, usted fue el último."

En varias ocasiones, tanto el alguacil de sala como el licenciado Nieves Rodríguez le pidieron a González Salas que se callara. Sin embargo, éste continuó alterado y manifestó que había agredido y amenazado al perjudicado

porque éste no le había pagado los daños que sufrió su automóvil durante un accidente; además, continuó haciendo expresiones amenazantes tanto al juez como al perjudicado.

A la luz de dichos incidentes, el juez Saavedra Serrano le impuso un desacato al acusado y ordenó que fuese ingresado en la cárcel por un término de noventa días.

## II

En su informe, la Comisión expresó que el querellado había desplegado *excesiva severidad e impaciencia* durante la vista antes reseñada. Concluyó que una conducta de la índole observada por el licenciado Saavedra Serrano *afectaba adversamente al sistema judicial, creaba una imagen negativa de los tribunales y era impermisible que un juez observara este tipo de comportamiento*, aun cuando las expresiones verbales o corporales de un individuo se encontrasen impregnadas de reto o amenaza. Por ello, la Comisión determinó que la conducta del entonces juez Saavedra Serrano constituyó una violación a los Cánones I, XVII, y XXVI *de Ética Judicial,* ante. Sin embargo, la Comisión expresó que conforme lo establecido en la *Regla 37 de Disciplina Judicial*(6) —y ya que el licenciado Saavedra Serrano había cesado en sus funciones como juez por haber expirado el término de su cargo— sólo le correspondía evaluar si tal conducta ameritaba la imposición de medidas disciplinarias por violación a los Cánones 9, 15, y 38 del Código de Ética Profesional, ante, según imputados en la querella presentada.

Luego de un examen de la conducta imputada, la Comisión determinó que no hubo violación a los referidos cánones de ética profesional. A estos efectos, razonó que los Cá-

---

(6) La referida regla dispone que aun cuando un juez haya presentado su renuncia al cargo o su término haya expirado, *esto no impedirá que continúe el procedimiento disciplinario en su contra, a los efectos de determinar si la conducta imputada amerita la recomendación de que se impongan medidas disciplinarias contra el querellado como abogado.*

nones 9 y 15 del Código de Ética Profesional, ante, habían sido diseñados con el fin de regir la conducta de los miembros de la profesión legal en los tribunales y que, por lo tanto, no aplicaban a los jueces. Asimismo, determinó que la conducta del entonces juez Saavedra Serrano no fue de tal magnitud que constituyera una violación al Canon 38 del Código de Ética Profesional, ante. Conforme a ello, la Comisión le recomendó a este Tribunal que no se impusieran medidas disciplinarias al querellado por su conducta como abogado.

## III

■   No tenemos duda de que la prueba presentada hubiera sido suficiente para sostener las violaciones originalmente presentadas en cuanto a los cánones de ética judicial, tal y como se expresa en el informe de la Comisión.(7) Verdaderamente la conducta del licenciado Saavedra Serrano, mientras fungió como juez en el caso contra el querellante, *fue una excesivamente hostil, impaciente, despectiva y hasta abusiva*; está reñida con dichos cánones, los que requieren del juez que actúe con serenidad, imparcialidad, consideración y respeto. *In re Scherrer*

---

(7) Así, el Canon I de Ética Judicial le impone a los jueces el deber de "velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura".

Por su parte, el Canon XVII dispone que "[e]n el curso de los procedimientos judiciales, el Juez o la Jueza mantendrá su actitud general, sus manifestaciones y el tono de su voz dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco hará comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa; ni ridiculizará de modo alguno a los abogados o las abogadas, las partes, los o las testigos, funcionarios o funcionarias del tribunal o a otras personas que a él o ella acudan".

Finalmente, el Canon XXVI dispone que "[l]os anteriores Cánones de [É]tica Judicial son normas mínimas de comportamiento que todo Juez y toda Jueza debe observar fielmente, tanto en su letra como en su espíritu, por ser consustanciales con el cargo judicial. Estos cánones no excluyen otras normas de conducta que también obligan al Juez y a la Jueza, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura". Cánones I, XVII y XXVI de Ética Judicial, ante.

*Caillet-Bois*, 162 D.P.R. 842 (2004); *In re Cruz Aponte*, 159 D.P.R. 170 (2003).

■ Todas las personas involucradas en el proceso judicial —jueces, litigantes, testigos y oficiales del tribunal— tienen un deber de cortesía con los demás participantes. *In re Barreto Ríos*, 157 D.P.R. 352 (2002). Además, algunas de las expresiones hechas por el entonces juez Saavedra Serrano, en corte abierta, *fueron amenazantes y hechas con el propósito de intimidar al querellante*, conducta contraria al propósito del esquema de normas que rigen la conducta de los jueces. Estas normas imponen a los jueces el deber de velar por mantener la fe de la ciudadanía en la justicia y promover la confianza del pueblo en nuestro Sistema Judicial. *In re González Acevedo*, 165 D.P.R. 81 (2005); *In re Cruz Aponte*, ante.

Sin embargo, el hecho de que el licenciado Saavedra Serrano ya no forma parte de la Judicatura nos impide sancionarlo de acuerdo con los cánones de ética judicial. Es por ello que corresponde examinar su conducta según lo *que establecen los cánones de ética profesional*.

Si bien coincidimos con la Comisión en cuanto a que las actuaciones del licenciado Saavedra Serrano no constituyeron violaciones a los Cánones 9 y 15 del Código de Ética Profesional, ante, por ser éstos dirigidos exclusivamente a la conducta del abogado litigante en corte —razón por la cual no aplican a los jueces— consideramos que su conducta sí infringió el citado Canon 38 del Código de Ética Profesional. Veamos.

■ De entrada, es menester señalar que, como norma general, este Tribunal no alterará las determinaciones de hecho de la Comisión, excepto en aquellos casos en que se demuestre parcialidad, prejuicio o error manifiesto. No obstante, este Tribunal *no está obligado* a aceptar sus recomendaciones. *In re Maldonado Torres*, 152 D.P.R. 858 (2000); *In re Moreira Avillán*, 147 D.P.R. 78 (1998); *In re Soto López*, 135 D.P.R. 642, 646 (1994).

■ Los miembros de la profesión legal tienen la responsabilidad de velar por que los distintos procesos legales

de la sociedad *consagren de manera efectiva y adecuada el principio de respeto a la inviolable dignidad del ser humano.* Preámbulo del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 1 n. " 'La práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo.' " *In re Santiago Rodríguez,* 160 D.P.R. 245, 254 (2003), citando a *Ramos Acevedo v. Tribunal Superior,* 133 D.P.R. 599, 613 (1993).

■ Este Tribunal ha expresado que, siendo los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. *In re Cintrón Colón,* 161 D.P.R. 778 (2004); *In re Santiago Rodríguez,* ante; *In re Silvagnoli Collazo,* 154 D.P.R. 533 (2001); *In re Ortiz Brunet,* 152 D.P.R. 542 (2000); *In re Coll Pujols,* 102 D.P.R. 313, 319 (1974).

■ En lo pertinente, el Canon 38 del Código de Ética Profesional, ante, le impone al abogado el deber de esforzarse al máximo de su capacidad *en la exaltación del honor y la dignidad de su profesión,* aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del Sistema Judicial, el abogado *deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.* Por la confianza depositada en él como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, *debe conducirse en forma digna y honorable.*

Surge de la prueba presentada e incontrovertida que la conducta del querellado *no* fue serena, imparcial y respetuosa, tal y como se exige de los jueces y de los abogados, sino todo lo contrario. El licenciado Saavedra Serrano, *desde el comienzo de la vista, actuó de forma hostil y descortés al dirigirse al querellante,* y en varias ocasiones hizo alusión a su poder y autoridad para "meter[lo] preso". Ade-

más, aun cuando el acusado querellante manifestó —*en forma serena y respetuosa*— ser una persona indigente y que carecía de representación legal, el querellado, de forma severa y abusiva, le advirtió que si no lo hacía "lo iba a lamentar"; le ordenó buscar representación legal sin hacer uso de su facultad para asignarle un abogado de oficio.[8] Igualmente, el licenciado Saavedra Serrano, aun cuando advirtió alguna condición mental o emocional de González Salas,[9] no observó sensibilidad alguna y continuó dirigiéndose a éste de forma recia y despectiva, lo que ocasionó que, finalmente, González Salas reaccionara en la forma en que lo hizo.

Aun cuando el comportamiento del querellante González Salas durante el transcurso de la vista pudo haber sido negativo, a través de sus gestos y actitudes, resulta necesario enfatizar que entre el comienzo de la vista y hasta el momento en que González Salas perdió el control, *éste no había hecho expresión verbal alguna que denotase falta de respeto hacia el juez ni hacia el procedimiento que se estaba llevando a cabo en su contra.* La mayor parte del tiempo el querellante se limitó a contestar las preguntas del querellado con un "sí, señor".

Resulta evidente que, con su proceder, el licenciado Saavedra Serrano lo que hizo fue intimidar innecesariamente a un ciudadano humilde y afectado emocionalmente, lo cual denigra la profesión legal, promoviendo y ocasionando que este ciudadano reaccionara de la forma en que lo hizo y perdiera el control sobre su comportamiento.

Somos del criterio que, evidentemente, el licenciado Saavedra Serrano no observó el deber de todo abogado de velar por que se observe el respeto por la dignidad humana. Sus actuaciones también son antagónicas con el

---

[8] Vale la pena señalar que cuando el licenciado Nieves Rodríguez asumió la representación legal de González Salas, el querellado expresó que no lo estaba asignando de oficio.

[9] Enfatizamos que cuando el licenciado Nieves Rodríguez asumió la representación legal de González Salas, el querellado le informó que notaba que éste se encontraba desorientado y que parecía no saber dónde estaba.

principio de servicio que representa el desempeño de la profesión.

En fin, los hechos que dieron lugar a esta querella demuestran que el licenciado Saavedra Serrano violentó el Canon 38 del Código de Ética Profesional, ante, al dejar de exaltar el honor y la dignidad que reviste la profesión legal. Ciertamente, sus actuaciones como abogado se alejan de una cabal aportación hacia la consecución de una mejor administración de la justicia.

En vista de que se trata de una primera ofensa, como medida disciplinaria únicamente consideramos procedente censurar al Lcdo. Luis G. Saavedra Serrano por la conducta incurrida en el presente caso, apercibiéndosele contra futuras infracciones.

*Se dictará Sentencia de conformidad.*

La Juez Asociada Señora Fiol Matta no intervino.