EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2025 TSPR 53 |
| Alejandro X. Sanfeliú Vera (TS-15,050) | 215 DPR ___ |

Número del Caso:  CP-2022-0001
                  (AB-2019-0191)


Fecha:  15 de mayo de 2025


Oficina del Procurador General:

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar


Representante legal del querellado:

     Lcdo. José A. Cuevas Segarra


Comisionada Especial:

     Hon. Crisanta González Seda


Materia:  Conducta Profesional – Censura enérgica y apercibimiento por infringir los Cánones 9 y 38 del Código de Ética Profesional.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re:*<br><br>Alejandro X. Sanfeliú Vera<br>(TS-15,050) | CP-2022-0001<br>(AB-2019-0191) |

***PER CURIAM***

En San Juan, Puerto Rico, a 15 de mayo de 2025.

Una vez más nos vemos obligados a censurar enérgicamente a un miembro de la profesión legal que, con su proceder, infringió los Cánones 9 (conducta del abogado ante los tribunales) y 38 (preservación del honor y la dignidad de la profesión) del Código de Ética Profesional, *infra*. Veamos.

I

El 16 de septiembre de 2019, el alguacil Carlos A. Sálamo Domenech (Sálamo Domenech o promovente) presentó una queja contra el Lcdo. Alejandro X. Sanfeliú Vera (licenciado Sanfeliú Vera o promovido).[1] Mediante esta, señaló que el 7

---

[1] AB-2019-0191. El Lcdo. Alejandro X. Sanfeliú Vera (licenciado Sanfeliú Vera) fue admitido al ejercicio de la abogacía en Puerto Rico el 13 de julio de 2004. Sin embargo, este no está admitido al ejercicio de la notaría en nuestra jurisdicción. Además, cabe señalar que en el 2020 se presentó una *Queja* (AB-2020-76) contra el letrado. No obstante, el 17 de junio de 2021 emitimos una *Resolución* en la que archivamos la queja y le apercibimos al licenciado Sanfeliú Vera de velar por el fiel cumplimiento del Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38.

de septiembre de 2019 tuvo que auxiliar a la Sra. Raquel Monge Plaza (Monge Plaza), evaluadora de criterios de riesgos del Programa de Servicios con Antelación al Juicio (PSAJ), debido a que el licenciado Sanfeliú Vera estaba ejerciendo una presión indebida e interfiriendo con la labor de dicha funcionaria. Lo anterior, con el propósito de que la Sra. Monge Plaza emitiera un informe favorable para su representado, el Sr. Jonathan Fonseca Estrada (Fonseca Estrada), a quien se le imputaban varios cargos por incurrir en violación a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "*Ley de Sustancias Controladas de Puerto Rico*", 24 LPRA sec. 2101 *et seq.*, y a la Ley Núm. 404-2000, según enmendada, conocida como "*Ley de Armas de Puerto Rico*", 25 LPRA sec. 455 *et seq.* (Derogada).

Asimismo, esbozó que intervino al percatarse del nerviosismo de la funcionaria, así como del tono de voz elevado y la actitud combativa del abogado. Adujo el promovente que le solicitó al licenciado Sanfeliú Vera que se retirara de la oficina del PSAJ, que permaneciera en la sala de espera y permitiera a la Sra. Monge Plaza continuar con su labor. Además, mencionó que le indicó al letrado que controlara su nivel de voz, que se calmara y argumentara ante la juez de turno cualquier discrepancia.

De igual forma, el promovente señaló que, en respuesta a sus requerimientos, el licenciado Sanfeliú Vera le cuestionó de manera grosera, airada y en voz alta: "¿si era yo, Juez o Dios?". Expuso que, acto seguido, el promovido le manifestó que no discutiera con él y lo retó a que lo arrestara.

Asimismo, sostuvo que el letrado mostró en todo momento una actitud destemplada, hostil, grosera, desafiante y fuera de control, frente a él, la Sra. Monge Plaza, agentes de la Policía de Puerto Rico y el público en general. El promovente detalló que el incidente quedó grabado dentro de los procedimientos del Salón de Sesiones 1, donde se atendía una vista de causa para arresto. Añadió que no era la primera ocasión en que él, al igual que otros alguaciles, habían tenido que lidiar con la conducta altanera, soberbia, confrontativa, prepotente y antagónica del promovido.

El 25 de septiembre de 2019, la Secretaría del Tribunal Supremo remitió al licenciado Sanfeliú Vera copia de la queja presentada y le concedió un término de diez (10) días para presentar su contestación.

Luego de la concesión de prórroga, el 21 de octubre de 2019, el promovido presentó su contestación en la que negó las imputaciones formuladas en su contra. Resaltó que la queja descansaba, en su vasta mayoría, en la opinión de terceras personas. En ese sentido, también indicó que la Sra. Monge Plaza no compareció ni expresó nada en su contra; que en la queja no se mencionaba a los alguaciles involucrados, ni las alegadas situaciones sucedidas entre estos y el promovido; y que las alegaciones formuladas en su contra versaban sobre generalidades acerca de lo que la comunidad jurídica pensaba de él.

En cuanto a los hechos que motivaron la queja, mencionó que, el 7 de septiembre de 2019 representaba al Sr. Fonseca Estrada, quien había sido entrevistado por la oficina del PSAJ

antes de la vista de causa probable para arresto. Esto tenía el fin de evaluar sus garantías de confiabilidad y para que dicha oficina rindiera el informe que el tribunal utiliza como herramienta para determinar el monto y condiciones de la fianza.

Según el licenciado Sanfeliú Vera, la Sra. Monge Plaza lo llamó luego de la evaluación para preguntarle si su cliente deseaba los servicios de la oficina del PSAJ, ya que el informe había sido positivo. Ante ello, el abogado presuntamente le contestó que eso lo decidirían luego de la vista de causa probable para arresto, si se encontraba causa, y dependiendo del monto de la fianza. Señaló que la funcionaria le manifestó que debía tomar la decisión en el momento. Además, mencionó que esta le explicó que, si decían que querían los servicios del PSAJ, luego no podrían retractarse; y si le decían que no, entonces, ella no prepararía el informe. Así pues, alegó que dicha práctica del PSAJ constituía un abuso de discreción.

Sobre dicha práctica, el letrado señaló que le indicó a la funcionaria que la preparación del informe era necesaria para que el tribunal pudiera realizar una evaluación de riesgo de fuga y de esta forma establecer una fianza razonable. En apoyo a su argumento, el abogado citó con aprobación la Regla 218 de Procedimiento Criminal, 34 LPRA Ap. I, R. 218. No obstante, adujo que la funcionaria se reiteró en su posición, pero él le expresó que necesitaba que preparara el informe en el que indicara al tribunal que su cliente cualificaba para los servicios del PSAJ, pero que este no los utilizaría.

Alegó que, en ese momento, llegó el promovente y le solicitó que saliera de la oficina del PSAJ de manera inadecuada. Aclaró que la Sra. Monge Plaza nunca solicitó la intervención del promovente, debido a que ellos únicamente estaban dialogando. Añadió que, aunque existían diferencias en cuanto al proceder del proceso criminal, no hubo ninguna situación fuera de control. Asimismo, precisó que el alguacil Sálamo Domenech no escuchó la conversación que tuvieron y, sin saber de qué se trataba, decidió expulsarlo de la oficina del PSAJ. Indicó que se sentó en una silla, lejos del mesón de los alguaciles, y desde allá cuestionó la falta de cortesía del promovente y su autoridad para removerlo de la oficina del PSAJ. Agregó que cuestionó la autoridad del promovente para mandarlo a callar, cuando él solo intentaba explicarle la situación. De igual modo, negó haberle faltado el respeto.

El licenciado Sanfeliú Vera manifestó en su contestación que, cuestionar la conducta de un alguacil, no constituía una conducta antiética. Añadió que, a su juicio, se deducía de la queja que el promovente tenía una agenda en su contra; esto, debido a que él había cuestionado la práctica del personal del alguacilazgo de poner bajo arresto a personas que no habían sido arrestadas conforme a la Regla 11 de Procedimiento Criminal, 34 LPRA Ap. I, R. 11, y a quienes todavía no se les había determinado causa para arresto. Expresó que discutió el asunto con el Juez Administrador, quien le dio la razón. Añadió que no constituía una conducta antiética la defensa de un ciudadano frente a una funcionaria del PSAJ que presuntamente se niega a culminar el proceso de evaluación de su oficina.

El 14 de abril de 2021, la Secretaria Interina de este Tribunal remitió copia fiel y exacta del expediente de la queja a la Oficina del Procurador General de Puerto Rico (Procurador General) para que realizara la investigación correspondiente y sometiera su informe, conforme a la Regla 14 del Reglamento del Tribunal Supremo, *infra*.

En cumplimiento, el 16 de julio de 2021, el Procurador General presentó su informe. Surge del proceso investigativo que el Procurador General entrevistó al promovente, a la Sra. Monge Plaza y a la alguacila Edith N. Rodríguez Robles (alguacila Rodríguez Robles). Además, como parte de la investigación, se remitió un interrogatorio al licenciado Sanfeliú Vera y se evaluaron las grabaciones de las vistas celebradas el 7 de septiembre de 2019 en la Sala de Investigaciones de Bayamón. Luego de evaluar el caso, el Procurador General recomendó la designación de un Comisionado Especial para que escuchara la prueba y dirimiera la credibilidad de las partes. Lo anterior, tenía el propósito de determinar si el letrado infringió los Cánones 9 y 38 del Código de Ética Profesional, *infra*.

El 5 de agosto de 2021, emitimos una *Resolución* en la que le concedimos veinte (20) días a las partes para que se expresaran sobre el Informe del Procurador General.

Posteriormente, el licenciado Sanfeliú Vera presentó su *Moción en Cumplimiento de Resolución*. Por medio de esta, indicó estar consciente del deber recíproco de cortesía y respeto hacia los funcionarios del tribunal. Además, argumentó que del informe no surgía la existencia de prueba robusta y

convincente que, de ser creída, justificara la imposición de sanciones en su contra. Sobre esto detalló que no se desprendía del expediente que el letrado hubiera utilizado lenguaje soez, indecoroso y vulgar. Añadió que tampoco surgía de la vista del 7 de septiembre de 2019, en el caso *El Pueblo de Puerto Rico v. Jonathan Fonseca Estrada*, BY2019CR01007-1, que el letrado había incurrido en algún acto de conducta impropia. Asimismo, expresó que, más allá de generalizaciones difamatorias y subjetivas, el informe del Procurador General no identificó con precisión lenguaje hiriente, grosero o provocativo que atentara contra la dignidad del promovente. Por esta razón, sostuvo que el expediente del caso no contenía la prueba requerida para iniciar el procedimiento disciplinario en su contra.

Así las cosas, el 10 de diciembre de 2021, emitimos una *Resolución* en la que ordenamos al Procurador General presentar querella.

En cumplimiento con lo ordenado, el 14 de junio de 2022, el Procurador General presentó la *Querella*, en la cual se formularon los siguientes cargos en contra del licenciado Sanfeliú Vera:

> **CARGOS I y II**: El licenciado Sanfeliú Vera incurrió en un comportamiento y en un lenguaje irrespetuoso, poco profesional e impropio hacia funcionarios del tribunal mientras estos ejercían sus labores en la Sala de Investigaciones de Bayamón, el 7 de septiembre de 2019, en horas de la noche. En consecuencia, el querellado infringió el Canon 9 de Ética Profesional, *supra*, el cual obliga a los abogados a mantener una conducta respetuosa con los tribunales y sus funcionarios, y el Canon 38 de Ética Profesional, *supra*, el cual establece que los abogados deben exaltar el honor y la dignidad de la [profesión], aunque conlleve sacrificios personales, evitar hasta la apariencia de conducta profesional impropia, conducirse en forma digna y honorable, y hacer una cabal

aportación hacia la consecución de una mejor administración de la justicia.[2]

En su *Contestación a Querella*, el licenciado Sanfeliú Vera negó que los acontecimientos del 7 de septiembre de 2019 en el Centro Judicial de Bayamón ameritaran la imposición de sanciones en su contra. Además, expresó que el querellante era el alguacil Sálamo Domenech, y no la Sra. Monge Plaza, por lo que no procedía imputarle al abogado violaciones éticas respecto a esta última. Asimismo, admitió que tenía un deber de respeto y cortesía ante los funcionarios del tribunal y que su conducta no fue dirigida a mancillar la institución de la judicatura ni a sus miembros. Igualmente, el licenciado Sanfeliú Vera alegó afirmativamente que el alguacil Sálamo Domenech no cumplió con su deber de cortesía y respeto. Del mismo modo, reiteró que no existía prueba robusta y convincente que, de ser creída, mereciera la imposición de sanciones en su contra. Añadió que los cargos eran vagos e imprecisos, y detalló que en ningún momento tuvo la intención de injuriar o molestar a funcionario alguno. En consecuencia, señaló que no se debía adoptar una regla que considerara un supuesto tono alto de voz como una posible violación al Código de Ética Profesional, frente a la obligación de un abogado de ofrecer una defensa idónea al acusado y a su propio derecho de libertad de expresión.

El 18 de marzo de 2022, emitimos una *Resolución* en la que ordenamos que continuara el proceso con el nombramiento de un Comisionado. De este modo, el 18 de septiembre de 2024,

---

[2] *Querella*, pág. 8.

fue designada la Hon. Crisanta González Seda, ex jueza del Tribunal de Primera Instancia, como Comisionada Especial (Comisionada Especial) para que recibiera la prueba y rindiera un informe con sus determinaciones de hechos y recomendaciones.

De conformidad con lo ordenado, el 27 de enero de 2025, la Comisionada Especial rindió su informe. Así pues, luego de evaluadas las expresiones contenidas en la *Querella*, los testimonios y la prueba presentada ante su consideración, concluyó que existe prueba clara, robusta y convincente que demostraba que la conducta del letrado fue irrespetuosa e hiriente hacia los funcionarios del tribunal.

Por su parte, el 18 de febrero de 2025, el licenciado Sanfeliú Vera presentó su *Réplica a Informe de la Comisionada Especial* en la que, en esencia, reiteró los argumentos expuestos en sus comparecencias previas y expresó sus disculpas a todos los funcionarios intervinientes.

Finalmente, el caso quedó sometido en los méritos para su adjudicación el 24 de febrero de 2025, por lo que procedemos a exponer la normativa aplicable.

II

A

El Reglamento de este Tribunal establece que una vez recibamos la recomendación del Procurador o Procuradora General en un proceso disciplinario contra un abogado o abogada, podemos ordenarle "que presente la querella correspondiente". Regla 14(e) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Por su parte, el inciso (h) de la

referida regla establece que este Tribunal podrá "nombrar un Comisionado o una Comisionada Especial para que reciba la prueba y rinda un informe con sus determinaciones de hecho". Regla 14(h) del Reglamento del Tribunal Supremo, *supra*. Así pues, corresponderá al Comisionado o Comisionada Especial recibir la prueba para evaluarla y dirimirla mediante la celebración de una vista. *In re Cardona Estelritz*, 212 DPR 649 (2023).

Por otro lado, hemos reiterado que el estándar probatorio a utilizarse por este Tribunal en casos disciplinarios es el de prueba clara, robusta y convincente, y no uno a base de conjeturas. *Íd.*, citando a *In re Caratini Alvarado*, 153 DPR 575, 65 (2001). Este estándar probatorio ha sido definido como aquella prueba que "produce en el juzgador una convicción de que las alegaciones fácticas son altamente probables". *In re Soto Charraire*, 186 DPR 1019, 1028 (2012); *In re Rodríguez Mercado*, 165 DPR 630, 641 (2005). Es pues, una prueba más sólida que la preponderancia de la prueba, pero menos rigurosa que la prueba más allá de toda duda razonable requerida en los casos criminales. *In re Rodríguez Mercado*, *supra*. En ese sentido, este Tribunal ha reconocido que la necesidad de un estándar más elevado en los procesos disciplinarios, más allá de la mera preponderancia de la prueba, responde al hecho de que está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento. *Íd.*

Asimismo, hemos sostenido que el Comisionado o Comisionada Especial merece nuestra deferencia, pues desempeña una función similar al juzgador de instancia. *In re Cardona*

*Estelritz*, *supra*; *In re Torres Viñals*, 180 DPR 236, 248 (2010); *In re Gordon Menéndez I*, 171 DPR 210, 217 (2007). Por tanto, el Comisionado o Comisionada Especial está en mejor posición para aquilatar la prueba testifical. *In re Gordon Menéndez I, supra.* Igualmente, aclaramos que este Tribunal no está obligado a aceptar el informe de un Comisionado o Comisionada Especial en un procedimiento disciplinario contra un abogado, sino que podemos adoptar, modificar o rechazar tal informe. *In re García Aguirre*, 175 DPR 433, 442 (2009); *In re Morales Soto*, 134 DPR 1012, 1016 (1994). No obstante, salvo que se demuestre prejuicio, parcialidad o error manifiesto, de ordinario, sostenemos las conclusiones de hecho del Comisionado o Comisionada Especial. *In re Cardona Estelritz, supra*; *In re García Ortiz*, 187 DPR 507, 521 (2012); *In re Cuevas Borrero*, 185 DPR 189, 202 (2012); *In re García Aguirre*, *supra*; *In re Moreira Avillán*, 147 DPR 78, 86 (1998).

B

El Código de Ética Profesional, 4 LPRA Ap. IX, es el cuerpo legal que contiene las pautas mínimas que rigen las actuaciones de los miembros de la profesión legal. *In re Santiago Ortiz*, 2024 TSPR 127, 215 DPR __ (2025); *In re Torres Alvarado*, 212 DPR 477, 485 (2023); *In re De Jesús Román*, 192 DPR 799, 802 (2015). Ello redunda en beneficio de la profesión, la ciudadanía y nuestras instituciones de justicia. *In re Soto Matos*, 2024 TSPR 91, 214 DPR __ (2024); *In re Montalvo Negrón*, 213 DPR 342, 345 (2023); *In re Cruz Liciaga*, 198 DPR 828, 834 (2017). De este modo, el incumplimiento con dicho ordenamiento ético acarrea la imposición de sanciones disciplinarias.

*In re Edmundo Ayala Oquendo*, 2025 TSPR 9, 215 DPR __ (2025);
*In re Torres Alvarado*, *supra*, pág. 485; *In re Rodríguez Lugo*,
201 DPR 729, 736 (2019).

C

Sabido es que todas las personas involucradas en los
procesos judiciales tienen un deber de cortesía con los demás
participantes. *In re Saavedra Serrano*, 165 DPR 817, 829
(2005). Igualmente, y en lo pertinente al caso que nos ocupa,
el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX,
C.9, establece que, "[e]l abogado debe observar para con los
tribunales una conducta que se caracterice por el mayor
respeto." Además, el Canon 9 dispone que "el deber de respeto
propio para con los tribunales incluye también la obligación
de tomar las medidas que procedan en ley contra funcionarios
judiciales que abusan de sus prerrogativas o desempeñan
impropiamente sus funciones y que no observ[a]n una actitud
cortés y respetuosa". *Íd.*

Surge del Canon 9 del Código de Ética Profesional, *supra*,
que este exige constante respeto de parte de los abogados
hacia los tribunales. *In re Díaz Olivo I*, 203 DPR 517, 519
(2019)(Resolución). Por tanto, sobre el Canon 9 hemos
expresado que:

> De esta manera, reconoce que "para reclamar derechos y
> solventar controversias no es menester lastimar la dignidad
> personal ni institucional de los miembros de la judicatura,
> como de ninguna otra persona". Después de todo, "el que un
> abogado defienda apasionada y diligentemente la causa de
> acción de su cliente, no es incompatible con la exigencia de
> que cuando vaya a dirigirse al tribunal lo haga respetuosa y
> decorosamente". Hemos resuelto que un abogado o abogada falta
> el respeto al tribunal cuando realiza imputaciones infundadas
> que "tiendan a degradar o a afectar la dignidad, honorabilidad
> e integridad de los tribunales o de sus funcionarios o que
> puedan debilitar o destruir el respeto [o] la confianza
> pública en los mismos". (Citas omitidas). *Íd.*, pág. 520.

En esa misma línea, este Tribunal ha resuelto que infringe el Canon 9 del Código de Ética Profesional, *supra*, el abogado o abogada que "observe una conducta irrespetuosa y poco profesional contra los empleados de la Rama Judicial". *In re Barreto Ríos*, 157 DPR 352, 357 (2002). En el pasado hemos expresado que, sin moderación en el lenguaje **y temperamento**, los profesionales del derecho y los jueces no podemos funcionar. *In re Rivera García*, 147 DPR 746, 749 (1999); *In re Pérez Abreu*, 149 DPR 260, 263 (1999). "La grosería, **gritería**, las imputaciones infundadas y las alegaciones contrarias a la verdad o desprovistas de una razonable presunción de exactitud, no tienen cabida en la administración de la justicia". (Énfasis nuestro). *In re Barreto Ríos*, *supra*, pág. 357. Ciertamente, aunque el derecho constitucional a la libertad de expresión cobija a los abogados y abogadas, este cede ante el uso de palabras soeces o groseras y la falta de respeto. *In re Rodríguez Rivera*, 170 DPR 863, 868 (2007).

En *In re Barreto Ríos*, *supra*, censuramos enérgicamente al licenciado Barreto Ríos por insultar al personal de la Secretaría del Tribunal de Primera Instancia, diciendo: "están con una dejadez, arrastrando las nalgas, culipandeándose por la Secretaría y güeveando". En esa ocasión expresamos que, aunque dicha conducta en sí no era una antiética, la excesiva y grosera manifestación de tal opinión no era digna de un abogado.

Por otro lado, en *In re Rodríguez Rivera*, *supra*, suspendimos al licenciado Rodríguez Rivera del ejercicio de

la abogacía y de la notaría por un término de tres (3) meses. En el referido caso, el licenciado Rodríguez Rivera realizó comentarios ofensivos mediante llamada a una funcionaria del Centro Judicial de Guayama.

Ahora bien, cabe señalar que, además de sancionar a los miembros de la profesión legal por el uso de lenguaje soez e irrespetuoso, también hemos sostenido que el uso de un tono desafiante y descontrolado por parte de los abogados y abogadas infringe el Canon 9 del Código de Ética Profesional, *supra*.

En *In re Rodríguez Santiago*, 157 DPR 26 (2002), suspendimos a un abogado al negarse a aceptar la designación como abogado de oficio que le hiciera el Tribunal de Primera Instancia y al negarse, de manera injustificada, a ofrecer su dirección al Tribunal. En esa ocasión señalamos que:

> Una lectura de la transcripción de evidencia revela que el Lcdo. Rodríguez Santiago "nunca utilizó lenguaje soez o altisonante" al dirigirse al tribunal de instancia durante el transcurso del incidente en controversia. Diferimos, sin embargo, de su señalamiento a los efectos de que su conducta no tuvo el efecto de menospreciar ni de mancillar al tribunal. El referido abogado en corte abierta, esto es, en presencia del público allí reunido, se negó, **en un tono un tanto desafiante**, a aceptar la designación como abogado de oficio que le hiciera el tribunal. Por otro lado, se negó, en cinco ocasiones distintas, a brindar su dirección al tribunal, a pesar de los pacientes requerimientos a esos efectos del magistrado que presidía los procedimientos. **Ello, a nuestro juicio, denota un grave desprecio a la autoridad del tribunal y constituye, como correctamente señala el Procurador General, "una clara violación al deber de respeto al tribunal que requiere el Canon 9"** del Código de Ética Profesional, ante. (Énfasis en el original suprimido y énfasis suplido). *Íd.*, págs. 33-34.

Asimismo, en *In re Pérez Abreu*, *supra*, un abogado, "*en dos (2) ocasiones distintas*, irrumpió en la oficina de la licenciada González Maldonado *en forma descontrolada y hablando en voz alta y estrepitosa*, recriminando a dicha

funcionaria por alegadamente ésta actuar en forma prejuiciada contra sus clientes". (Bastardillas en el original). *Íd*., pág. 261. Cabe señalar que el abogado también le expresó a la funcionaria que le iba "a arrancar la cabeza". En esa ocasión censuramos enérgicamente al licenciado Pérez Abreu.

De igual forma, en *In re Ortiz Sánchez*, 201 DPR 765 (2019), suspendimos a una abogada por, entre otras cosas, violentar el Canon 9 del Código de Ética Profesional, *supra*. En el referido caso, la letrada contactó a un Oficial Jurídico de este Tribunal, mediante la red social *LinkedIn,* y **utilizó un tono desafiante** cuando este le advirtió que podría estar violando los cánones de ética profesional por dirigirse a él directamente con relación a un asunto presentado ante nosotros. Señalamos que "la licenciada Ortiz faltó a su deber de mostrar respeto hacia la institución que representa el Tribunal." *Íd*., pág. 783.

En suma, viola el Canon 9 del Código de Ética Profesional, *supra*, el abogado o abogada que utiliza lenguaje soez, despectivo, indecoroso, vulgar y grosero contra los funcionarios de este Tribunal. Además, la gritería, conductas irrespetuosas y los tonos de voces desafiantes constituyen conductas antiéticas que laceran la dignidad e integridad de los tribunales o de sus funcionarios.

D

El Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, dispone que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar

hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

Surge de este canon que todo abogado se debe conducir de tal forma que exalte la dignidad y el honor de su profesión. *In re Reyes Coreano*, 190 DPR 739, 757 (2014). En cuanto a la apariencia de conducta impropia, esta "tiene un efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión, así como lo tiene la verdadera 'impropiedad ética'." *In re Toro Iturrino,* 190 DPR 582, 591 (2014).

De este modo, los profesionales del derecho tienen la responsabilidad moral y ética de examinar su comportamiento continuamente. *In re Gordon Menéndez I*, *supra*, pág. 642; *In re Nieves Nieves*, 181 DPR 25, 45 (2011). En ese sentido, hemos mencionado que los abogados y abogadas son el espejo donde se refleja la imagen de la profesión. Por tal razón, estos "deben actuar de manera harto escrupulosa y guiados por un robusto sentido de responsabilidad; ello, dada la ingente función social que ejercen." *In re Fingerhut Mandry*, 196 DPR 327, 333 (2016).

Asimismo, un abogado o abogada no viola el Canon 38 por el simple hecho de violar otros Cánones del Código de Ética Profesional. *In re Reyes Coreano*, *supra*. Por tanto, para determinar si un letrado o letrada violó el referido canon, debemos determinar "si su conducta demuestra que realmente no

exaltó, al máximo de su capacidad, el honor y la dignidad de la profesión legal o si transgredió de otra forma los deberes contenidos en ese canon". *In re Villalba Ojeda*, 193 DPR 966, 976 (2015). Ahora bien, como hemos reafirmado, los profesionales del derecho pueden ser sancionados por infringir el Canon 38, aun cuando son disciplinados por violar otros cánones. *Íd.*, pág. 976.

## III

Según mencionamos, la Comisionada Especial, a quien le brindamos gran deferencia, determinó que en este proceso disciplinario se presentó prueba clara, robusta y convincente de que la conducta del licenciado Sanfeliú Vera el día de los hechos fue irrespetuosa e hiriente hacia los funcionarios del tribunal. Por tanto, la Comisionada Especial concluyó que el letrado contravino las disposiciones de los Cánones 9 y 38 del Código de Ética Profesional, *supra*.

Por su parte, el licenciado Sanfeliú Vera indicó que en este caso no existe prueba clara, robusta y convincente para requerir la imposición de sanciones en su contra. Arguyó que no se le imputa el uso de lenguaje soez, indecoroso o vulgar. Asimismo, argumentó que los actos imputados no son de tal grado que puedan causar una alteración a la paz o sensibilidad. Igualmente, apunta a que no se debe adoptar una regla que considere el tono alto de voz *per se*, o un estilo asertivo o fogoso, como una violación a los Cánones de Ética Profesional. Diferimos.

Los procesos criminales pueden generar fogosidad por las partes que intervienen en ellos. Sin embargo, defender a un

cliente apasionada y diligentemente, no debe ser incompatible con la exigencia de dirigirse al tribunal y a sus funcionarios con respeto. El respeto que se exige ante los tribunales no se limita al lenguaje utilizado, sino que también se extiende a la forma y temperamento en que los abogados o abogadas se dirigen al tribunal y a sus funcionarios. Así que, gritar, hablar de forma descontrolada, en voz alta, de forma estrepitosa o utilizar un tono desafiante contra funcionarios del Poder Judicial es constitutivo de violación del Canon 9 del Código de Ética Profesional, *supra.* Por lo tanto, corresponde a los abogados y abogadas utilizar los canales adecuados para atender cualquier discrepancia que pueda surgir entre estos y los funcionarios del tribunal.

La Comisionada Especial tuvo el beneficio de escuchar a las partes durante la vista evidenciaria y, de este modo, evaluar la credibilidad que le mereció el testimonio de cada una. En lo pertinente al caso ante nuestra consideración, la Comisionada Especial, luego de evaluadas las expresiones del licenciado Sanfeliú Vera, junto con el análisis de los testimonios y la evidencia recibida en el proceso, realizó sus determinaciones de hechos y concluyó que:

(1) El querellado alzó la voz de forma inapropiada a la funcionaria de la Oficina de Servicios con antelación al juicio, dándole instrucciones sobre lo que tenía que hacer luego de la evaluación de su cliente, provocando que ésta se sintiera incómoda y tuviera que reclamarle que era una dama.

(2) El promovente tuvo que intervenir en auxilio de la funcionaria, al escuchar las expresiones de esta y del querellado, como entendía que era su deber, y solicitar a este que bajara el tono de la voz, saliera de la oficina de la funcionaria y la dejara hacer su trabajo.

(3) El querellado continuó en la sala, aledaña al salón de sesiones que se encontraba en sesión, expresándose en alta

voz, cuestionando la autoridad del alguacil y haciendo expresiones sobre los derechos de su representado y la ausencia de conocimiento de Derecho de los funcionarios, sin escuchar la solicitud del promovente para que bajara el tono de la voz, con el conocimiento de que se estaba celebrando una vista. Esto, en un salón del tribunal, en el que había otros funcionarios y ciudadanos, provocando que se extendiera una discusión en un lugar que no era el foro apropiado, conociendo que lo apropiado era hacer cualquier planteamiento ante el juez una vez entrara a la celebración de la vista de su cliente. Ello, ya que en sus escritos y testimonios indica que ya, en una situación en sala de investigaciones hizo un planteamiento ante el juez administrador y prevaleció.

(4) Las actuaciones del querellado al continuar argumentando y provocando una discusión con el promovente, en voz alta, al no atender las instrucciones de éste para que bajara la voz, provocó que hubiera que detener la vista en proceso y que la alguacil de sala tuviera que salir e intervenir para controlar la situación.

(5) No existe evidencia ni podemos hacer una inferencia razonable de la prueba en el sentido de que este incidente estuviera vinculado o fuera resultado del supuesto odio que alega el querellado, que sentían el promovente y otros funcionarios hacia él por haber prevalecido en su solicitud de que no se esposara a sus clientes antes de entrar a sala, lo que supuestamente provocó un alegado regaño del juez administrador a los alguaciles.

(6) El querellado reconoce en su contestación a la Querella, la necesidad de "moderar su tono de voz inherentemente alto para evitar futuras malas interpretaciones". No obstante, ha negado en todo el proceso alguna responsabilidad o actuación inapropiada, adjudicando la responsabilidad de lo ocurrido a los funcionarios. (Cita omitida).[3]

Cónsono con lo anterior, la Comisionada Especial adjudicó expresamente la cuestión de credibilidad y descartó la versión del querellado. En ese sentido, el licenciado Sanfeliú Vera no nos ha persuadido de que la Comisionada Especial haya incurrido en prejuicio, parcialidad o error manifiesto. Igualmente, como bien esbozamos en nuestro derecho aplicable, la gritería, la altanería y los tonos de voz desafiantes no tienen cabida en la sana administración de la justicia.

Por tanto, concluimos que quedó demostrado, con prueba clara, robusta y convincente, que el licenciado Sanfeliú Vera

---

[3] *Informe de la Comisionada Especial*, págs. 25-26.

actuó en contravención de los Cánones 9 y 38 del Código de Ética Profesional, *supra*.

IV

Por último, corresponde determinar la sanción disciplinaria a imponerle al abogado por su conducta antiética. Al momento de fijar la misma, procede que evaluemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada; y (9) otros atenuantes o agravantes que surjan de los hechos. *In re Roldán González*, 195 DPR 414 (2016); *In re Rivera Nazario*, 193 DPR 573 (2015).

En la evaluación de la sanción a aplicarse, consideramos como factores atenuantes los siguientes: (1) que el querellado presentó, sin objeción del Procurador General, tres declaraciones juradas sobre su buena reputación; (2) que el abogado solo ha tenido una queja previa, la cual fue archivada; (3) que el licenciado se excusó con el alguacil Sálamo Domenech; (4) que el letrado expresó que la situación actual entre él y el personal del alguacilazgo se caracteriza como una excelente; (5) que no existe evidencia de conducta repetitiva; (6) no hay ánimo de lucro vinculado a este incidente y; (7) que el abogado ha expresado que tiene la más alta consideración y respeto para con los funcionarios del Poder Judicial. Sin embargo, no surge del expediente que el

licenciado Sanfeliú Vera se haya excusado con la Sra. Monge Plaza.[4]

Así pues, luego de evaluar la totalidad de las circunstancias y en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que censuremos enérgicamente al licenciado Sanfeliú Vera por infringir los Cánones 9 y 38 del Código de Ética Profesional, *supra*. Le apercibimos que, de incurrir en conducta antiética ulterior, se podría exponer a sanciones disciplinarias más severas.

Notifíquese al licenciado Sanfeliú Vera esta *Opinión Per Curiam* y *Sentencia*.

Se dictará *Sentencia* de conformidad.

---

[4] *Informe de la Comisionada Especial*, pág. 27.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re:*<br><br>Alejandro X. Sanfeliú Vera<br>(TS-15,050) | CP-2022-0001<br>(AB-2019-0191) | |

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de mayo de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente *Sentencia*, censuramos enérgicamente al Lcdo. Alejandro X. Sanfeliú Vera por infringir los Cánones 9 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Le apercibimos que, de incurrir nuevamente en conducta antiética ulterior, se podría exponer a sanciones disciplinarias más severas.

Notifíquese personalmente.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo.

Bettina Zeno González
Subsecretaria del Tribunal Supremo